OPINION OF THE COURT
Douglas F. Young, J.
As a result of the recent decrease in the number of school age children, school districts throughout the State have been forced to abolish teaching positions and "excess” the teachers in the tenure area in which the termination has occurred (Education Law, § 2510, subd 2). This procedure has *660 given rise to numerous lawsuits in which "excessed” teachers seek reinstatement based upon a definition of the relevant tenure area which differs from that employed by the school board in deciding who loses his or her job. (See, e.g., Steele v Board of Educ., 40 NY2d 456; Matter of Baer v Nyquist, 34 NY2d 291.)
The courts quickly realized that the outcome of such litigation necessarily affected some teachers who have not been excessed, but would be subject to the loss of their employment if the petitioner teacher’s definition of the relevant tenure area is correct. Thus, it is now well settled that those teachers whose job security would be affected by a determination of a tenure dispute must be joined as respondents in the reinstatement proceedings. (Matter of Lezette v Board of Educ., 35 NY2d 272; Matter of Skliar v Board of Educ., 45 AD2d 1012.)
The instant case presents an added wrinkle to this rapidly developing body of law. Petitioner Sharon Jacobs’ employment with the respondent Board of Education, East Meadow Union Free School District (the District) was terminated on July 28, 1976 because of the abolition of a position in her tenure area. On November 1, 1976, Jacobs instituted this CPLR article 78 proceeding, seeking reinstatement on the ground that Paul Dreska, the respondent-intervenor, had less seniority in the relevant tenure area than Jacobs. Jacobs’ counsel is the general counsel of New York State United Teachers (NYSUT), a State-wide federation of local teachers’ organizations. The East Meadow Teachers’ Association, which is the certified bargaining representative for teachers in the District, is a member of NYSUT and a percentage of the dues it collects from its members is paid to NYSUT to defray its expenses. Dreska, who was permitted to intervene by Mr. Justice Gibbons’ order and is a member of the East Meadow Teachers’ Association and NYSUT, now moves for an order either disqualifying petitioner’s counsel or requiring NYSUT to provide him with counsel or funds to pay his own counsel. Dreska bases his request on the proposition that a labor organization to which he pays dues should not champion the cause of a fellow teacher who seeks to be reinstated to her position at his expense. Simply stated, he argues that NYSUT should not favor one member over another.
Petitioner’s counsel’s position is that neither he nor NYSUT is under any obligation to provide any member with counsel, but that it provides counsel for teachers in job-related matters *661 where counsel considers the teacher’s case meritorious. Counsel further argues that there is no statutory or common-law authority for Dreska’s position. Counsel claims that Vaca v Sipes (386 US 171) is the pertinent authority contrary to Dreska’s position. In Vaca, the United States Supreme Court held that a certified bargaining representative’s duty to fairly represent all of the members of the bargaining unit (see Steele v Louisville & Nashville R. R. Co., 323 US 192, 203) does not require the union to take every grievance raised by a member of the bargaining unit to arbitration merely because he demands it. Rather, the obligation of the union is satisfied as long as the union is neither arbitrary nor discriminatory and acts in good faith (Steele v Louisville & Nashville R. R. Co., 323 US, at p 207). Thus, on the basis of Vaca, counsel argues that NYSUT through counsel "made a good faith reasonable judgment that petitioner’s rights had been violated, and, accordingly, provided her with counsel.” The union, it is argued, "must also be free to pursue those matters it deems meritorious” and "it must be free to take a position on * * * disputes.” (Humphrey v Moore, 375 US 335, 349.) In Humphrey v Moore (supra), the United States Supreme Court rejected the contention that a union’s recommendation that seniority lists of two merging companies within the same bargaining unit be "dovetailed” was a breach of the duty owed to members of the bargaining unit who were employed by one of the companies. The court stated that, absent hostility, bad faith or dishonesty, the union should not be "neutralized” when an issue arises between two sets of employees (Humphrey v Moore, 375 US 335, 349, supra). A similar holding was reached in Waiters Union, Local 781 of Washington, D.C. v Hotel Assoc. of Washington, D.C. (82 LRRM 2646), where the court, relying on Humphrey, stated that a court "cannot find a breach of the duty of fair representation when a union’s decision in a matter as to which the interests of differing groups of employees are in conflict is not shown to be fraudulent or deceitful and is not based upon capricious or arbitrary factors” (Waiters Union, Local 781 of Washington, D.C. v Hotel Assoc. of Washington, D.C., 82 LRRM, at p 2648, supra).
The above-cited cases deal with issues arising in the context of collective bargaining and grievance arbitration and are grounded in the "majoritarian principles” of Federal labor policy enunciated in the National Labor Relations Act (US Code, tit 29, § 151 et seq.; Emporium Capwell Co. v Western *662 Addition Community Organization, 420 US 50, 63). None, however, deals with a situation such as the instant proceeding, where the labor organization has made a choice between two of its members in a matter which has little or no bearing upon the membership as a whole. Thus, the "majoritarian principles” (Emporium Capwell Co. v Western Addition Community Organization, supra), which underscore the union’s need for "a wide range of reasonableness” (Ford Motor Co. v Huffman, 345 US 330, 338) are not really present. Moreover, this case does not involve a labor organization’s failure or refusal to proceed with what it considered a meritless grievance, as in Vaca v Sipes (386 US 171, supra), but rather a decision to espouse the cause of one union member over another after speaking with one member only.
I find little in the way of precedent or dictum on this issue. The case of Matter of Crystal v Board of Educ. (87 Misc 2d 632) is not really in point. There Judge Burstein did detect a potential conflict of interest but that conflict would have occurred if the union were to represent both sides in a dispute between two groups of members. Judge Burstein did not hold that the teachers association had to provide counsel for either or both sides. In this case the union is supporting one side against the other by supplying legal assistance and is refusing to take both sides, and the question is whether the union is unfair to the side it opposes.
Assuming as I do that the conflict involved is a genuine one and the claims are not frivolous, what is the duty of the union to its member? The union counsel states that there is no contractual obligation to provide counsel to members and none has been alleged or proven.
I grant that the union has the right to take a good faith position opposing some of its members in grievance proceedings or matters of general concern to members. Nevertheless it seems incongruous for a union to sponsor or to support the attack of one member against the job security of another member in what can be termed a "one on one” dispute. I believe that this issue involves considerations of public policy. If this conduct is permissible and becomes a regular practice it holds the possibility of a proliferation of lawsuits sponsored by the union on behalf of some of its members against the other members. This could lead to serious intra-union dissension and fragmentation of the union.
As indicated previously it appears that there is no contrac *663 tual obligation on the part of the union to provide counsel for a member, provided of course that it acts in good faith. That is not the final word, however. Does not the member have the right, based on the usual expectations of a prospective union joiner, to anticipate that in a crucial contest for job survival, if the power of the union is not available to support him, at least it will not be used to support his opponent with free legal representation? I think so. However, that does not mean that the union must remain mute when a bad policy is put forward. It does not preclude a stand by the union in matters of principle. In such a situation the union can make application to appear amicus curiae and the court can then decide whether it be appropriate for the union to so appear in that case. Thus the union would fulfill its function of supporting the principle it regards as meritorious without providing legal representation for the actual prosecution of a lawsuit against a member. If the union’s position is taken in good faith, the member whose stand the union opposes amicus curiae cannot, in my view, reasonably complain.
Realizing the delicacy of intervening in a client-attorney relationship, the court makes the following disposition.
The court rules that it is improper for counsel employed by NYSUT to represent the petitioner Jacobs in opposition to intervenor-respondent Dreska and in this proceeding which was initiated against the Board of Education and that said counsel must withdraw unless the union provides independent legal counsel for the intervenor-respondent or agrees to pay the reasonable legal fees incurred by intervenor-respondent in this proceeding.
Settle order on notice. The order shall provide for a stay of all proceedings in this matter, pending compliance with this ruling and that compliance shall take place within 45 days of the entry of this order.