**NATIONAL CUSTOMS BROKERS AND FORWARDERS ASSN. OF AMERICA, Plaintiff,**

**v.**

**The UNITED STATES, et al., Defendants.**

**Court No. 89–07–00400.**

United States Court of International Trade.

Feb. 23, 1990.

Tompkins & Davidson, Harvey A. Isaacs, Brian S. Goldstein, and Laurence M. Friedman, New York City, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Civ. Div., U.S. Dept. of Justice, New York City, Susan Burnett Mansfield and Richard McManus, U.S. Customs Service, for defendants.

OPINION

RESTANI, Judge:

In *National Customs Brokers v. United States,* 13 CIT ——, 723 F.Supp. 1511 (1989) (*NCBFA I*) the court denied plaintiff, National Customs Brokers and Forwarders Association, Inc.'s (NCBFA), motion seeking a preliminary injunction in this matter. The facts relevant to this dispute are set forth in detail in that opinion. This action may be summarized as an action to compel defendants, the Secretary of the Treasury and the Commissioner of Customs, to promulgate regulations establishing a certain hierarchy among those permitted to enter merchandise transported by international courier services in consolidated shipments. Plaintiff contends that a broker chosen by a courier service may not make entry of individual shipment in a consolidated shipment if another broker has been chosen by the owner or purchaser of the individual shipment.[1] It is not disputed that without utilizing a licensed customs broker a courier service may not enter merchandise that it does not own or purchase.

Plaintiff has now moved under CIT RULE 56.1 for summary judgment and a declaratory judgment, a permanent injunction, and the issuance of a writ of mandamus. Defendants, the Secretary of the Treasury and the Commissioner of Customs, oppose the motions and cross move for summary judgment. In addition, defendants move for dismissal of the action under CIT RULE 12 and contend that the court lacks jurisdiction over the subject matter and that plaintiff lacks standing.

The court first turns to the questions of jurisdiction and standing raised by defendants in *NCBFA I* and in its present motion. Defendants claim that the court lacks jurisdiction under 28 U.S.C.

1. Customs did propose regulations which came close to plaintiff's view. They were withdrawn after comment. *See Withdrawal of Proposed Customs Regulations Amendment Relating to Entry of Consolidated Shipments,* 54 Fed.Reg. 5091 (1989). *See also NCBFA I,* 13 CIT at ——, 723 F.Supp. at 1513. According to the complaint, however, the proposed regulations would not accomplish plaintiff's purpose because the regulations would permit standard courier contract language to override the individual shipment documentation. Complaint ¶ 17.

§ 1581(i)(1), (2) & (4) because the action does not involve administration of laws "providing for revenue from imports or tonnage or for tariffs, duties, fees, or other taxes on the importation of merchandise." Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment at 9. Defendants rely heavily on *K Mart Corp. v. Cartier Inc.*, 485 U.S. 176, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988), discussed extensively in *NCBFA I*, 13 CIT ——, 723 F.Supp. at 1514–15.

As the court has distinguished *K Mart* previously it is unnecessary to further discuss that case. Suffice it to say that while the issue here does not directly "involve" a protest, it does involve the administration of the laws with respect to tariffs and revenue from imports. *See* 28 U.S.C. § 1581(i)(1), (2) & (4) and 19 U.S.C. § 1484(a)(2)(D) (entry of merchandise). The entry process is the key administrative act leading to the imposition of tariffs and the collection of revenues from imports. *See also NCBFA I*, 13 CIT at ——, 723 F.Supp. at 1513–15 (there is "no manifestation of Congressional intent that some avenue of judicial review other than section 1581(i) is to be followed or that opportunity for review is to be denied entirely"). Accordingly, defendants' arguments on this point are to no avail.

Defendants' standing challenge also fails. While the court has assumed some conflict among the members of NCBFA, defendants' arguments that the association has not suffered any injury are not convincing.[2] Defendants rely particularly on *Arjay Assoc., Inc. v. Bush*, 891 F.2d 894 (Fed.Cir.1989). There the Federal Circuit affirmed dismissal of the action because plaintiff demonstrated no colorable right to the continued importation of goods excluded by Executive Order. The Circuit Court pointed out, however, that Congress may choose the terms upon which the right to import may be exercised, *id.* at 896–897, and once it has done so, a party with a right so given by Congress may bring an action to protect its interests. Here, plaintiff's members are directly affected by the implementation of section 1484. In what manner entry of goods is to be made is of unique interest to plaintiff's members and Customs's improper implementation of section 1484 would affect them directly and, for the most part, adversely.[3] Therefore, defendants' standing arguments fail. *See also NCBFA I*, 13 CIT at ——, 723 F.Supp. at 1514–16. *And see Franchise Tax Bd. v. Alcan Aluminum, Ltd.*, —— U.S. ——, 110 S.Ct. 661, 665, 107 L.Ed.2d 696 (1990).

As noted in *NCBFA I*, the issue here rests on the interpretation of 19 U.S.C. § 1484(a)(2)(C) (1988) which states:

> When an entry of merchandise is made under this section, the required documentation shall be filed either by the owner or purchaser of the merchandise or, when appropriately designated by the owner, purchaser, or consignee of the

2. Defendants refer to New York state and federal case law to support their argument that NCBFA lacks standing. Defendants maintain that an association, whether incorporated or not, must bring an action benefiting *all* its members before it may have standing. Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment at 16–17. The court has previously discussed federal law on this point and the New York case to which defendants refer is not applicable. In *Application of Crystal v. Bd. of Educ.*, 87 Misc.2d 632, 385 N.Y.S.2d 701 (N.Y.Sup.Ct. Nassau Co.1976) an association was found not to have standing to assert the *personal tenure rights* "of seven individuals who, at the time the proceeding commenced were no longer even members of petitioner." *Id.* 87 Misc.2d at 634, 385 N.Y.S.2d at 703. New York courts have recognized that an association may not choose sides between individuals in a lawsuit which "can be termed a 'one on one' dispute," but may "take a good faith position opposing some of its members...." *Application of Jacobs v. Bd. of Educ.*, 94 Misc.2d 659, 662, 405 N.Y.S.2d 159, 162 (N.Y.Sup.Ct. Nassau Co. 1977). Here, there is no "one on one" dispute to raise appearances of conflicts of interest. Beyond this, there has been no claim that the allegedly aggrieved NCBFA members' interests were undermined by plaintiff's access to privileged materials or other information that may have worked to their detriment as was the case in *Glueck v. Logan*, 653 F.2d 746 (2d Cir.1981), cited by defendants.

3. The court, of course, could solve any problems of form by ordering plaintiff to add an individual member as plaintiff. This seems a useless formalistic step given the court's decision on the merits, as well as on standing.

merchandise, a person holding a valid license under section 1641 of this title. When a consignee declares on entry that he is the owner or purchaser of merchandise, the appropriate customs officer may, without liability, accept the declaration. For the purposes of this subtitle, the importer of record must be one of the parties who is eligible to file the documentation required by this section.[4]

NCBFA continues to maintain that the "appropriately designated" language in the quoted subsection is restrictive enough to require mandatory deconsolidation of shipments under a master bill of lading or airway bill whenever a bill of lading or airway bill for an individual shipment covered by the master bill designates a specific broker other than the one for the master bill. According to plaintiffs, in that situation expedited entry by the broker for the consolidated shipment would be improper. Essentially, therefore, the question presented is whom did Congress intend to control the entry of goods under section 1484.

In order to resolve this question the court must turn first to the text of the statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). In the absence of explicit definitions, the court must interpret the statute's words in their ordinary, contemporary, and common meaning. *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). The meaning of the words must also be construed in the context of their enactment by the legislature. *Watt v. Alaska,* 451 U.S. 259, 266–67, 101 S.Ct. 1673, 1677–78, 68 L.Ed.2d 80 (1981).

According to Webster's dictionary, "appropriate" is defined as "especially suitable," "fit," "proper," and "belonging peculiarly." *Webster's Third New Int'l Dictionary* 106 (1981). The term "a person" "appropriately designated" in section 1484(a)(2)(C) therefore can be read only to signify one who is designated in a suitable or proper manner. According to the same subsection such person must also hold a valid customs brokers license. If this person, therefore, has been designated in a proper or suitable manner by *either* the owner, purchaser, or consignee, and if this person is a properly licensed customs broker, such person may make entry of the items in the shipment.

In reading section 1484, the court concludes that the section's structure indicates no choice on the part of Congress as to the "appropriately designated" person apart from the specific requirements of section 1484. Plaintiff's interpretation can be viewed only as a rewriting of the statute to restrict Congress's broad approach, and particularly, to eliminate the word "consignee" in the first sentence of section 1484(a)(2)(C).

The term "consignee" has traditionally been a broad one. For tariff purposes it is not synonymous with "owner" or "purchaser." *See* 19 U.S.C. § 1484(a)(2)(C); 19 C.F.R. § 101.2 (1989) and *Customs Directive* 3530–02 (November 6, 1984). It includes both nominal consignees and ultimate consignees. *See* R. Sturm, *Customs Law and Administration* § 2.3 (3rd *ed.* 1989) and 19 C.F.R. § 141.54 (1989). If courier services are "nominal consignees," they are nonetheless "consignees" within the meaning of 19 U.S.C. § 1484(a)(2)(C). Under the statute a consignee may designate a licensed broker to enter goods, even if the consignee may not enter goods itself.

Plaintiff argues, however, that it is only trying to achieve the statutory aim of requiring the "importer of record" to control entry. Plaintiff's Brief in Support of its Motion for Summary Judgment at 6. This argument is inapposite. "Importer of record" is mentioned in section 1484(a)(2)(C). That section, however, states simply that the importer of record "must be one of the parties who is eligible to file the documentation required by this section." According to the statute, such a

**4.** 19 U.S.C. § 1641(b)(1) (1988) reads:

No person may conduct customs business (other than solely on behalf of that person) unless that person holds a valid customs broker's license issued by the Secretary under paragraph (2) or (3).

person is *either* the owner or purchaser, or a licensed broker "appropriately designated" by the "owner, purchaser or *consignee.*" [Emphasis Supplied].

The introductory language in section 1484(a)(1) is also of no help. There Congress indicated that "*one* of the parties *qualifying* as 'importer of record' " was to engage in the acts necessary to comply with the requirements of section 1484. [Emphasis Supplied]. This language does not require a specific party to act pursuant to section 1484. Indeed this language indicates an absence of Congressional desire to create a statutory hierarchy or priority list among those persons qualified to make entry under section 1484.

In contrast to plaintiff's interpretation of the statute, defendants' position has the "substantial virtue of giving meaning to *all* the words of the statute." *See Clark-Cowlitz v. Federal Energy Regulatory Commission,* 826 F.2d 1074, 1088 (D.C.Cir. 1987) (*citing United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955); *Washington Market Co. v. Hoffman,* 101 U.S. (11 Otto) 112, 115–16, 25 L.Ed. 782 (1879)). [Emphasis in Original]. The agency's interpretation is reflected in its choice not to promulgate the regulations NCBFA would like to see implemented. This exercise of agency choice appears to leave the language of the statute alone and does not do violence to Congressional intent, as it can be gleaned from the face of the statutory text.

The agency's choice not to take further regulatory action is also supported by the legislative history of section 1484.[5] In particular, the House Conference Report on Pub.L. 97–446. H.R. REP. No. 989, 97th Cong., 2d Sess. 40, *reprinted in* 1982 U.S. CODE CONG. & ADMIN.NEWS 4078, 4137, 4140 states that the House Amendment to the Senate Amendment to the 1982 Trade Act "would prohibit nominal consignees from conducting customs business on behalf of any other person, *unless the consignee is a licensed customs broker.*" [Emphasis Supplied]. This language is strong indication that Congress implemented section 1484 to permit the continuation of entry of goods and packages by nominal consignees *as long as* they are licensed customs brokers. Furthermore, the legislative history of the act indicates Congress was well aware of Customs's practice and should have known what changes in language were necessary to statutorily bar nominal consignees from making entry. *See id. And see* 127 Cong.Rec. H.4314 (July 14, 1981) (statement of Rep. Frenzel).

Plaintiff relies on certain statements of Representative Frenzel. Representative Frenzel's statement in the Congressional Record of July 14, 1981 appears to support Customs's reading of the statutory language. Representative Frenzel stated that under the amendment

> ... couriers would not be allowed to make informal or formal entries, which they were never intended to handle, on behalf of others *without a brokers license.*
>
> Finally, the bill specifies that carriers cannot knowingly certify an unlicensed party as owner or consignee or agent in order that such party could conduct customs business on behalf of another with no requirement to become qualified in customs procedures. This would further

5. In its argument, plaintiff refers extensively to the statements of the J.F.K. Airport Customs Brokers Association to "indicate [what] their understanding [of the Statute] would require." Plaintiff's Brief in Support of its Motion for Summary Judgment at 42. In evaluating the legislative intent behind the statute, however, the court will consider the testimony of the witnesses at the congressional hearings only as the expression of arguments presented to Congress for and against the relevant bill's adoption. *North American Foreign Trading Corp. v. United States,* 9 CIT 80, 82, 607 F.Supp. 1471, 1474 (1985), *aff'd* 783 F.2d 1031 (Fed.Cir.1986). Moreover, the testimony presented by the J.F.K. Airport Customs Brokers Association, as interpreted by plaintiff, directly conflicts with the statement of James R. Berger, President of World Courier, Inc. *Compare Miscellaneous Tariff and Customs Amendments,* H.R.Rep. No. 837, 97th Cong., 2nd Sess. 365–74 *with id.* at 375–81. Furthermore, the statute as enacted appears to reflect Congress's accommodation of the concerns raised by the customs brokers regarding licensing requirements with the apparent conflicting problem of delay of entry raised by the courier services.

prohibit individuals other than licensed brokers from making formal or informal customs entries merely by being designated consignee.

127 Cong.Rec. H.4314 (July 14, 1981) (statement of Rep. Frenzel) [Emphasis Supplied]. Representative Frenzel's post-enactment statements, however, are not instructive as to the statute's interpretation.[6] These statements are not reflective of Congress's consensus as it was articulated at the time of section 1484's enactment. Post-enactment statements by Congress are a hazardous basis for inferring an earlier Congress's intent. *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 331, 4 L.Ed.2d 334 (1960); *Epstein v. Resor,* 296 F.Supp. 214, 216 (N.D.Cal.1969). Of even less import are statements of one Congressman that were never before the enacting body. *Nat'l School of Aeronautics, Inc. v. United States,* 142 F.Supp. 933, 938, 135 Ct.Cl. 343 (1956) ("Whatever may have been the opinion of individual members as to the intent of Congress, the Congress as an entity, with those who were managing the legislation for it fully aware of the problem, made its choice.... A legislature speaks through statute, and, in cases where the statutes require interpretation, through committee reports and debates. No member of a legislature, outside the legislature, is empowered to speak with authority for the body.").

The court also concludes that the agency's action challenged here "accords with the broader purposes animating Congress" and safeguards the public interest in assuring that the legislative choice made is implemented properly. *See Clark-Cowlitz,* 826 F.2d at 1089. The legislature in enacting the 1982 Trade and Tariff Act stated specifically in section 1484 that the Secretary was to issue regulations to "facilitate" commerce, to protect the collection of revenue, and to provide for "equal treatment of all importers of record of imported merchandise." 19 U.S.C. § 1484(a)(2)(D). The affidavits presented to the court support Customs's view that implementation of the regulations proposed by NCBFA would slow down the entry process. This would run counter to Congress's policy choice in enacting section 1484 to expedite and facilitate international trade.[7]

In addition, there is no indication that the various "importers of record" are being treated unfairly or "unequally." If a specific broker is named or designated on an individual package in a consolidated shipment, and a broker other than the one specifically named or designated on the package enters it and damage results to the owner or broker originally designated, the parties should look to their contracts for remedies. Leaving to the parties to protect themselves through contract or through their choice of carrier appears more appropriate than compelling the agency to prohibit entry of consolidated shipments in the manner requested. Under the terms of the statute Customs remains free to deal with any licensed broker chosen by an owner, purchaser, or consignee.[8]

6. For completeness' sake, however, one may wish to compare the very general post-enactment statements of the Congressman found at Exhibit H to Plaintiff's Brief in Support of its Motion for Summary Judgment, to the letter of Alfred R. DeAngelus, Deputy Commissioner of Customs, written to Congressman Joseph P. Addabbo dated August 3, 1984, discussing possible regulations. Exhibit L to Plaintiff's Brief in Support of its Motion for Summary Judgment. That letter indicates Customs's view fairly soon after the statute was amended that there was no intention at the time the amendment was passed to deprive courier services of the right to appoint brokers. *Accord* Customs Directives 3530–02 (November 6, 1984) and 3530–01 (January 19, 1984). (Attachments 1 and 2 to Defendants' Brief in Opposition to Plaintiff's Motion for Preliminary Injunction).

7. Whether some other type of regulation could ease plaintiff's problem without violating Congressional intent is not an issue for the court at this time.

8. Even some of NCBFA's complaining members appear to view the problem as one involving an interference with contractual rights. *See* Letters by *Féraud, Paris* (April 1, 1985), *Pfizer International, Inc.* (April 3, 1985), *Leon of Paris Co., Inc.* (April 8, 1985), *Caravelle Pour Homme* (April 8, 1985), *Town Circle Sportswear, Inc.* (April 8, 1985), and *Chester Kessler, Inc.* (April 8, 1985), APPENDIX L to Plaintiff's Brief in Support of its Motion for Summary Judgment.

The court's review of the statute, its context, and the express intent of Congress prior to its enactment, reveal no reason why Customs's interpretation of the statute at issue should be disturbed. The agency made a choice which conforms to Congressional intent as it can be reasonably ascertained. The court will not add words to the statute or subtract them from it.

Accordingly, plaintiff's motions are denied and judgment is entered in favor of defendants.