Slip Op. 02 - 44

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - x
                                       :
VIRAJ FORGINGS LTD. and M/S DISHAKA
U.S.A., INC.,                          :

                          Plaintiffs, :

             v.                        :  Consolidated
                                          Court No. 99-03-00123
                                       :
UNITED STATES OF AMERICA,
                                       :
                           Defendant.
                                       :
- - - - - - - - - - - - - - - - - - - x


                          Opinion

[Plaintiffs' motion for judgment on
 the agency record granted, in part.]


                                        Decided:  May 6, 2002


     Miller & Chevalier, Chartered (Peter Koenig) for the plain-
tiffs.

     Robert D. McCallum, Jr., Assistant Attorney General; David M.
Cohen, Director, Commercial Litigation Branch, Civil Division, U.S.
Department of Justice (Lucius B. Lau); and Office of Chief Counsel
for Import Administration, U.S. Department of Commerce (Cindy G.
Buys and Edna Boyle-Lewicki), of counsel, for the defendant.


          AQUILINO, Judge:  By order of the court upon the consent

of the parties, this action consolidates a complaint in the name of

Viraj Forgings Ltd., a producer of merchandise allegedly within the

ambit of the Amended Final Determination and Antidumping Duty Or-

der; Certain Forged Stainless Steel Flanges from India, 59 Fed.Reg.

5,994 (Feb. 9, 1994), of the International Trade Administration,

U.S. Department of Commerce ("ITA"), with a subsequent summons and

complaint in the names of the same Indian producer and the U.S.
importer of record of its product, M/S Dishaka U.S.A., Inc.  The
gravamen of these pleading(s) is that no antidumping duties be
imposed upon Viraj entries through January 1997 under the guise of
the aforesaid ITA order.

I

According to the essentially-identical complaints, there
were only two such entries, numbered 0630859-2 and 0630988.
Jurisdiction of the court is pleaded under 28 U.S.C. §§ 1581(i),
2631(i), which has engendered answer(s) by the defendant in
accordance with CIT Rule 7(a), followed by a motion by the
plaintiffs for judgment upon the ITA's record pursuant to Rule
56.1.  The papers submitted in support of and opposition to the
motion outline salient facts that are not genuinely in dispute.
The defendant asserts that, on

> June 17, 1997, Commerce issued instructions (message
> number 7167117) to the U.S. Customs Service . . . to
> liquidate Entry Number 0630859-2 at zero rate of anti-
> dumping duty.

Defendant's Memorandum in Opposition, p. 8.  In doing so, this
memorandum cites defendant's answer, paragraph 22, which also
admitted (without explanation) plaintiffs' allegation "with respect
to Commerce's non-issuance of liquidation instructions concerning
Entry Number 0630988".  In other words, this action apparently
boils down to this lone shipment from India, and over which neither

side has been willing to budge short of this court disposition years after its arrival, allegedly some time between January 1996 and February 1997 per plaintiffs' complaint(s), paragraph 12.

The background of this stalemate is that, at the time of the American domestic industry's petition to the ITA to investigate allegations of sales in the United States of stainless steel flanges from India at less than fair value, Viraj Forgings Ltd. was not involved. The resultant affirmative ITA determination and order, supra, set an initial antidumping-duty rate of 162.14 percent for Indian producers not accounted for therein individually. See 59 Fed.Reg. at 5,995. Later that year, Congress passed the Uruguay Round Agreements Act ("URAA"), Pub.L.No. 103-465, §220(a), 108 Stat. 4809, 4858 (1994), effective January 1995 and stating that, if the ITA

> receives a request from an exporter or producer of the subject merchandise establishing that-
>
> > (I) such exporter or producer did not export the merchandise that was the subject of an antidumping duty . . . order to the United States . . . during the period of investigation, and
> >
> > (II) such exporter or producer is not affiliated . . . with any exporter or producer who exported the subject merchandise to the United States . . . during that period,
>
> [it] shall conduct a review under this subsection to establish an individual weighted average dumping margin . . . for such exporter or producer.

19 U.S.C. §1675(a)(2)(B)(i). Viraj Forgings Ltd. availed itself of this provision, and the agency responded in "accordance with

section 353.22(h) of the Department's interim regulations".

Certain Forged Stainless Steel Flanges From India; Initiation of
New Shipper Antidumping Duty Administrative Review, 60 Fed.Reg.
55,241 (Oct. 30, 1995).  This notice set the period to be reviewed
as March 1 to August 31, 1995, which proved barren of any Viraj
entries and which, in the absence of comment by any other
interested party, led to publication of an ITA determination of the
zero dumping margin for that Indian firm:  The

> Department shall instruct the U.S. Customs Service to
> assess no antidumping duties on all appropriate entries.
>
> Furthermore, . . . the cash deposit rate for Viraj
> will be zero percent.

Certain Forged Stainless Steel Flanges From India: Final Results of
Antidumping Duty New Shipper Review, 62 Fed.Reg. 1,317 (Jan. 9,
1997).

As indicated above, however, by the time of this final
publication, both of the above-numbered entries had landed.  In any
event, shortly thereafter, given that February was the anniversary
month of the ITA antidumping-duty order, supra, all parties
interested therein were duly invited to consider requesting an
administrative review thereof by the agency -- for the period
February 1, 1996 to January 31, 1997.  See Antidumping or Counter-
vailing Duty Order, Finding, or Suspended Investigation; Opportun-
ity to Request Administrative Review, 62 Fed.Reg. 4,978 (Feb. 3,
1997).  The deadline for doing so was stated to be the last day of

February 1997.  Viraj Forgings Ltd. made no request for agency

review during that timeframe.  Rather, on March 13, 1997, counsel,

apparently newly-retained by the company, submitted an "unusual

request for the Department to <u>self-initiate</u> an annual review of

Viraj"[1] based upon the following representations, among others:

> Viraj has just completed a new exporter review for flanges.  .  .  .  Sales reported in th[at] .  .  . review were based on purchase orders during the March to August 1995 new exporter review period.  USA shipments, invoicing and entries pursuant to these purchase orders occurred during the February 1996 to January 1997 period.

> Discussions by USA importers of Viraj flanges with U.S. Customs this week indicate .  .  . now .  .  . some confusion on whether:

>> (a)  that new exporter review just covers USA <u>entries</u> during the March to August 1995 period .  .  . when in fact

>> (b)  that review covered <u>orders</u> during that period with shipments and entries actually occurring well after the March to August 1995 new exporter review period .  .  ..

> There was also some confusion as to certain aspects of the new exporter review, such as:

>> (a)  the meaning of the zero dumping cash deposit requirement during the annual review periods covered by a new exporter review and the belief that, if no party requested a review during the zero cash deposit period, the result would be liquidation at that rate (per normal annual review practice of the past); and,

>> (b)  the belief that the bonding requirement for a new exporter who has not previously been reviewed to determine a dumping rate and in

---

[1] Plaintiffs' Rule 56.1 Motion for Judgment on the Record, Exhibit 2, second page (emphasis in original).

> the context of the just-established statutory
> new exporter provisions means a promise to pay
> any dumping duty later determined to be owed,
> with no dumping rate actually established at
> that point for the new exporter until the
> conclusion of the new exporter review.

> The concern is that Viraj, having participated in a
> new exporter review, and having demonstrated that it
> sells in the USA without dumping, will, as a result of
> confusion regarding the transition to new dumping
> procedures be subject to 162% dumping duties, and even
> for entries for which Viraj was found not be [*sic*] dump-
> ing in the new exporter review.  . . .

> *  *  *

> Alternatively, given that Viraj's original request
> for a new exporter review, based on <u>orders</u> during the new
> exporter review period, covered <u>shipments</u> which <u>entered</u>
> the USA during the February 1996 to January 1997 time
> period, the Department could interpret Viraj's prior
> request for a new exporter review liberally as a request
> (well before February 28, 1997) for an annual review of
> entries during the February 1996 to January 1997 time
> period as well (given the sales data which Viraj submit-
> ted to the Department during the course of that review).

> Since this request is made even before the Depart-
> ment's initiation of annual reviews for the February 1996
> to January 1997 time period, this self-initiated review
> could be completed within the statutory time limits
> without (we believe) administrative inconvenience.[2]

The ITA denied this request in a letter ruling, concluding that,

> if the Department does not receive a timely request for
> an administrative review, the Department <u>will</u> instruct
> . . . Customs . . . to assess antidumping duties on the
> merchandise at rates equal to the cash deposit of, or
> <u>bond for</u>, estimated antidumping duties required on that
> merchandise at the time of entry.  Neither . . . URAA[]
> nor the Department's proposed regulations implementing
> the URAA amends the Department's regulation pertaining to
> automatic assessment of duties under 19 CFR § 353.22(e).
> Please be advised that based upon the above regulations,

---

[2] <u>Id</u>. at first-second pages (emphasis in original).  <u>See</u>
<u>also</u> <u>id</u>., Exhibit 3 (April 8, 1997) *passim*.

the Department has issued instructions to . . . Customs . . . to assess duties equal to the deposit or bond rate for any entries for which no administrative review was requested.[3]

Hence, the certified record filed herein, such as it is, reflects a disparate approach by the defendant to plaintiffs' entries in a setting conjuring the English embrace in the common law of the French *laschesse.* Indeed, while referring to "the long delay by the Department in issuing . . . such instructions"[4], intimating "commence[ment] of a court appeal immediately"[5], and asserting that they "would ask the court to enjoin the liquidation pending the outcome of the appeal"[6], the plaintiffs actually allowed to pass most of what they claim is the controlling, two-year period of limitation per 28 U.S.C. §2636(i) before filing their complaint(s) herein. Moreover, no application for immediate, interim injunctive relief was presented by them.[7]

---

[3] Defendant's Public Appendix 1, first page (May 23, 1997) (emphasis in original). <u>Cf</u>. Plaintiffs' Rule 56.1 Motion for Judgment on the Record, Exhibit 4 (June 2, 1997) ("Viraj requests that the Department reconsider its Letter Ruling").

[4] <u>Ibid</u>., Exhibit 4, p. 4.

[5] <u>Id</u>.

[6] <u>Id</u>.

[7] The parties were called to answer questions in open court about the unclear lie of this action, whereupon they have presented a most belated, consent application for a preliminary injunction, which has not been granted.

Contrary to such representations on the record, the defendant has now filed a declaration by its responsible Import Compliance Specialist to the effect that the ITA did not, in fact, issue liquidation instructions to Customs.

II

What has been presented in conjunction with plaintiffs'
motion for judgment on the agency record is a proposed form of
order, as required by CIT Rule 7(f)(1).  Succinctly, it would
direct that the

> U.S. Department of Commerce either (a) initiate an annual
> dumping review of Viraj flanges which entered the United
> States during the period of February 1996 to January 1997
> or (b) liquidate those entries at a 0% dumping rate.

Just as succinctly, this relief, at least as phrased, is not in
order.

A

The sum and substance of plaintiffs' pleaded position in
support of requiring now an administrative review by the ITA is
that

> Commerce's *Proposed Rules*, its subsequent statements of
> intent to apply the *Proposed Rules* prior to their formal
> adoption as final rules, its established practice of
> applying proposed rules prior to formal adoption of such
> rules as final, and the use of an entry that occurred
> after the new shipper review's period of review to
> calculate the results of the new shipper review, led
> Viraj to reasonably believe that the disputed entry would
> be automatically liquidated at the zero percent rate
> found in the new shipper review rather than at the
> 162.14% rate for "all others" based on BIA, and thereby
> induced Viraj to, in February 1997, refrain from request-
> ing an administrative review of such entry of Viraj SSF
> during the period February 1996 to January 1997.[8]

---

[8] Plaintiffs' Complaint(s), para. 27.  The acronym *BIA* sig-
nifies statutory provision for agency resort to best information
otherwise available, while *SSF* is a short-form reference to
plaintiffs' merchandise.

The defendant dismisses this thesis, pointing out that the govern-
ing ITA regulation, 19 C.F.R. §353.22(a) (1997), clearly provided
that requests for administrative review of an outstanding anti-
dumping-duty order be made during the anniversary month of the
publication of that order; that the agency was under no statutory
obligation to conduct that kind of review in the absence of a
proper, timely request; that, to the extent the governing regula-
tion contemplated agency initiation of such a review, it just as
clearly provided for "the Secretary's own initiative when appropri-
ate," 19 C.F.R. §353.22(c) (1997) (emphasis added); and that the
ITA did not "induce" Viraj to miss the filing deadline because (i)
the rules referred to by the plaintiffs, which were published sub
nom. Antidumping Duties; Countervailing Duties, 61 Fed.Reg. 7,308,
7,364-65 (Feb. 27, 1996), were simply as noticed, namely, "proposed
rulemaking and request for Public Comments", and were not in effect
during the period at issue herein; (ii) the regulation which was in
effect clearly stated that the antidumping duty applicable "at the
time of entry" would apply when no administrative review was
requested, 19 C.F.R. §353.22(e)(1) (1997); (iii) that the ITA
indicated during the new-shipper review instigated by Viraj that
the results thereof would only apply to the entries covered by that
process; and (iv) the February 1997 invitation to request an
administrative review stated clearly what the ITA would instruct
Customs to do in the absence of a timely request.  Furthermore,
while the defendant does admit that the

> proposed regulations published by Commerce on February
> 27, 1996 suggested that the applicable rate for purposes
> of the automatic assessment regulation would be the rate
> found in the most recently completed segment of the
> proceeding[9,]

in fact the precise provision the plaintiffs attempt to rely on now

was dropped officially by the Department in the face of "strong"[10]

negative objection on the part of the public, thereby leaving

automatic assessment of antidumping duties at rates equal to

estimated duties required on merchandise at the times of entry -

in the absence of ITA receipt of a timely request for an

administrative review.  19 C.F.R. §351.212(c) (1998).  That is,

Viraj Forgings Ltd. was apprised at both the initiation and the

conclusion of its new-shipper agency review that, unless otherwise

indicated, the Department's regulations were as amended by the

interim versions published in the Federal Register on May 11, 1995,

60 Fed.Reg. 25,130.[11]

---

[9] Defendant's Memorandum in Opposition, p. 16 (emphasis in
original).

[10] Antidumping Duties; Countervailing Duties, 62 Fed.Reg.
27,296, 27,313 (May 19, 1997).

[11] 62 Fed.Reg. at 1,317.  Cf. 60 Fed.Reg. at 55,241; Certain Pasta From Italy:  Initiation of New Shipper Antidumping Duty Administrative Review, 62 Fed.Reg. 8,927 (Feb. 27, 1997); Certain Stainless Steel Wire Rod From India;  Preliminary Results of New Shipper Antidumping Duty Administrative Review, 62 Fed.Reg. 6,171 (Feb. 11, 1997); Stainless Steel Bar From India: Final Results of New Shipper Antidumping Duty Administrative Review, 62 Fed.Reg. 4,029 (Jan. 28, 1997); Fresh and Chilled Atlantic Salmon From Norway; Final Results of New Shipper Antidumping Duty Administrative Review 62 Fed.Reg. 1,430 (Jan 10, 1997).
     In sum, proposed regulations, by their very nature, do not bind conclusively an agency.  Cf. 5 U.S.C. §553.

Finally, accepting the above-quoted representation of plaintiffs' counsel that discussions in March 1997 between U.S. importers of Viraj flanges and Customs engendered "some confusion", there is no showing why that contact could not have taken place earlier -- before the February 28th deadline for requesting an administrative review. Indeed, the ITA has long warned the world of international traders that it will not conduct an administrative review of their U.S. entries based upon an untimely request to do so. E.g., <u>Certain Refrigeration Compressors From the Republic of Singapore; Final Results of Countervailing Duty Administrative Review</u>, 56 Fed.Reg. 63,713, 63,714 (Dec. 5, 1991). And, based upon the long-standing principle that the agency's interpretation of its own regulations implementing the statute(s) it administers is entitled to "substantial weight"[12], the courts have held that the

> ITA is not required to accept clarifications of unclear, ambiguous or otherwise inadequate requests for adminis- trative review after the deadline for submitting requests for administrative review has passed.

<u>Floral Trade Council v. United States</u>, 13 CIT 142, 144, 707 F.Supp. 1343, 1344, <u>aff'd</u>, 888 F.2d 1366 (Fed.Cir. 1989). To require otherwise could impede the orderly conduct of the review process ordained by Congress.

---

[12] <u>Asociacion Colombiana de Exportadores de Flores v. United States</u>, 903 F.2d 1555, 1559 (Fed.Cir. 1990), quoting <u>Floral Trade Council v. United States</u>, 888 F.2d 1366, 1368 (Fed.Cir. 1989).

B

Part of that process, of course, is the collection of any duties found to be owed, including those directed at foreign dumping in the U.S. market. But the agency designated by Congress for their liquidation is the Department of the Treasury's Customs Service, not the Department of Commerce's International Trade Administration, ergo plaintiffs' proposed form of order, which is quoted above, is not properly directed. Presumably, what counsel had in mind is that, under the Trade Agreements Act of 1979, as amended, the ITA is authorized *viz.* 19 U.S.C. §1675(a)(3)(B) to instruct Customs to liquidate entries reviewed for imposition of antidumping duties.

Before this court can consider the actions or inactions of those two responsible agencies, and their consequences as a matter of post-URAA law, it must address the question of its jurisdiction to render a decision thereon. To repeat, the plaintiffs have pleaded jurisdiction pursuant to 28 U.S.C. §§ 1581(i), 2631(i). Defendant's answer(s) denied this as a basis for affirmative relief herein, but counsel have abandoned that position since the original joinder of issue. Be that as it may, by declining to conduct the administrative review requested by the plaintiffs, the ITA has precluded this court's jurisdiction under 28 U.S.C. §§ 1581(c), 2631(c). In such cases of agency inactivity, the court's residual jurisdiction pursuant to subsection(s) (i) has

been sustained.  See, e.g., Pac Fung Feather Co. v. United States,

19 CIT 1451, 911 F.Supp. 529 (1995):

> . . . The court may conduct limited review of agency action to determine whether such action falls within the agency's congressionally-delegated authority and whether the statutory language authorizing the agency action has been properly construed.

19 CIT at 1456, 911 F.Supp. at 533, aff'd, 111 F.3d 114 (Fed.Cir.

1997).  And subsection 2631(i) incorporates the Administrative

Procedure Act, 5 U.S.C. §702.  Section 706 thereof specifies the

scope of review in a case such as this to include the court's

> **(1)** compel[ling] agency action unlawfully withheld or unreasonably delayed; and

> **(2)** hold[ing] unlawful and set[ting] aside agency action, findings, and conclusions found to be-

>> **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . ..

See 28 U.S.C. §2640(e); Shakeproof Indus. Prods. Div. of Ill. Tool

Works, Inc. v. United States, 104 F.3d 1309, 1313 (Fed.Cir. 1997);

Earth Island Institute v. Daley, 23 CIT 215, 230, 48 F.Supp.2d

1064, 1077 (1999).

### (1)

URAA was enacted by Congress to implement the Uruguay

Round Agreements signed by the United States.  See H.R. Rep. No.

103-826, pt. 1, pp. 4, 10-11 (1994).  The purpose of amending

section 751 of the Trade Agreements Act of 1979 in the manner

quoted above, 19 U.S.C. §1675(a)(2)(B)(i), was to "conform U.S. law

more specifically to [article 9.5 of the Uruguay Round Antidumping]

Agreement"[13], which states that, for any product subject to anti-

dumping duties,

> the authorities shall promptly carry out a review for the
> purpose of determining individual margins of dumping for
> any exporters or producers in the exporting country in
> question who have not exported the product to the
> importing Member during the period of investigation,
> provided that these exporters or producers can show that
> they are not related to any of the exporters or producers
> in the exporting country who are subject to the anti-
> dumping duties on the product.  . . . No anti-dumping
> duties shall be levied on imports from such exporters or
> producers while the review is being carried out.  The
> authorities may, however, withhold appraisement and/or
> request guarantees to ensure that, should such a review
> result in a determination of dumping in respect of such
> producers or exporters, anti-dumping duties can be levied
> retroactively to the date of the initiation of the
> review.

Uruguay Round Agreement on Implementation of Article VI of the

General Agreement on Tariffs and Trade, April 15, 1994, art. 9.5,

H.R. Doc. No. 103-316, vol. 1, p. 1467 (1994).

In the light of this principle, and the stated legisla-

tive intent to effectuate it, the court considers the matter clear

that Congress afforded new shippers to the United States an avenue

for assignment of their own dumping margins, if any, for shipments

on or after request for review pursuant to section 1675(a)(2)(B)-

(i), supra, and that any "all-others" rate not attach to such ship-

ments.  To hold otherwise thus would not appear to be in accordance

with that law.

---

[13] H.R. Rep. No. 103-826, pt. 1, p. 55 (1994).

The defendant claims that "Entry Number 0630988, the only entry at issue here, was not part of [the] new shipper review." Defendant's Memorandum in Opposition, p. 10.  That is,

> only one sale was examined as part of the review and, thus, only the entry that corresponded to that sale . . . was subject to assessment at zero percent.

Id. at 18.  This current stance, however, does not necessarily establish the rational connection required by 5 U.S.C. §706(2), supra, between the facts found and the agency choice made to foreclose this court's intervention.  See, e.g., Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962).  Indeed, careful consideration of the ITA's own *Federal Register* notices regarding its new-shipper review does not conclude the matter.  None specifies particular shipments. The Preliminary Results state that the "review covers one Indian manufacturer/exporter, Viraj, and the period March 1, 1995 through August 31, 1995." 61 Fed.Reg. at 51,262.  In the background section thereof, the agency notes that the first Viraj shipment entered on October 30, 1995.  Id.

> [Export Price was] based on the price from Viraj to an unaffiliated party since the sale was made prior to importation into the United States, in accordance with section 772(a) of the Act.

Id.  However, in its published conclusion, the ITA states that, as

> a result of our comparison of CEP [constructed export price] and NV [normal value], we preliminarily determine that the following weighted-average dumping margin exists: . . . 0.00.

Id. at 51,263.  The Final Results repeat the scope of review indicated in the Preliminary Results.  See 62 Fed.Reg. at 1,317.

While the ITA may have based its determination on an examination of the one shipment that became entry number 0630859-2, that fact cannot be conclusively discerned from the record at bar, even after the hearing in open court and subsequent submissions.

Given this shortcoming in the context of URAA and the international agreements it seeks to effectuate[14], this court is unable to conclude that liquidation of one Viraj post-new-shipper-review entry at zero percent and of the other at 162.14% would not be arbitrary and capricious.

### III

Hence, judgment will enter, granting so much of plaintiffs' motion as to enjoin permanently occurrence of such an administrative anomaly in this matter.[15]

Decided:  New York, New York
          May 6, 2002

_____
                                                                  Judge

_____

[14] A long-standing principle of the United States has been that "an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains." Murray v. Schooner Charming Betsy, 6 U.S. (2 Cranch) 64, 118 (1804). Cf. Restani & Bloom, Interpreting International Trade Statutes: Is the Charming Betsy Sinking?, 24 Fordham Int'l L.J. 1533 (2001).

[15] Following the hearing, Defendant's Response to the Court's Inquiry Regarding the Relevancy of 19 U.S.C. §1504 to This Action was filed. This submission fails to establish that liquidation of plaintiffs' lone entry at issue herein has been "suspended as required by statute or court order" and thus that the entry cannot "be deemed liquidated at the rate of duty . . . asserted at the time of entry by the importer of record" within the meaning of section 1504(a).