**Leticia JARAMILLO and Joseph Rey, Appellants,**

**v.**

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

**Press Communications LLC, Intervenor.**

**No. 98–1061.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 6, 1998.

Decided Dec. 15, 1998.

---

Bruce A. Eisen argued the cause and filed the briefs for appellants.

Gregory M. Christopher, Counsel, Federal Communications Commission, argued the cause for appellee. With him on the brief were Christopher J. Wright, General Coun-

sel, and Daniel M. Armstrong, Associate General Counsel.

Harry F. Cole was on the brief for intervenor Press Communications LLC.

Before: WALD, WILLIAMS and HENDERSON, Circuit Judges.

STEPHEN F. WILLIAMS, Circuit Judge:

Leticia Jaramillo and Joseph Rey petition for review of a Federal Communications Commission decision to authorize assignment of a radio license; we dismiss for lack of standing.

Press Broadcasting Company sought the FCC's permission to assign its license for station WTKS(FM), in Cocoa Beach, Florida, to Paxon Broadcasting of Orlando, L.P. The petitioners here filed a Petition to Deny, arguing that Press was not qualified to be a licensee because of alleged deception in a decade-old transaction involving the acquisition of a completely different station, and that under the Commission's "Jefferson Radio" policy, see *Jefferson Radio Co. v. FCC*, 340 F.2d 781 (D.C.Cir.1964), the assignment must be held up until the Commission had resolved that claim. The FCC's Audio Services Division dismissed the petition on the merits and granted Press's application to transfer. The Commission denied review. 13 F.C.C.R. 1026 (1998).

Petitioners, of course, bear the burden of establishing the three elements of constitutional standing in this court: injury in fact, causation, and redressability. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). They claim to have done so in two ways: as listeners and as competitors.

The only assertions of fact on which petitioners base their claim to listener standing is that they are "residents of Orlando, Florida" and "listeners of WTKS(FM)." (Orlando is near Cocoa Beach.) But they have identified no serious causal link between

FCC scrutiny of the conduct of a licensee who seeks to *depart* from operation of a station and any possible material impairment of their hopes or expectations as listeners.

We assume arguendo that petitioners may have suffered a cognizable injury from being within the listening range of a radio station held by a licensee that acquired the station in violation of the FCC's standards of candor. But past injury is not enough to support the standing of a party who doesn't seek damages or similar compensation for that injury. See *Branton v. FCC*, 993 F.2d 906, 909 (D.C.Cir.1993). If a petitioner cannot obtain compensation to himself for a past injury, he has failed to show its redressability. See *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, ——–——, 118 S.Ct. 1003, 1018–19, 140 L.Ed.2d 210 (1998).

Nor could there be any direct future injury, for the outcome—transfer of the license to another—is exactly the same as would eventuate if the Commission held up the assignment, found Press not qualified, and took away its license. The case is thus completely different from prior decisions of this court where we found listener standing to object to Commission decisions that would create or extend some arguably program-impairing circumstance, such as a duopoly, see *Llerandi v. FCC*, 863 F.2d 79, 85 (D.C.Cir.1988), or a renewal of a license for a firm guilty of broadcast policy violations, see *Office of Communication of the United Church of Christ v. FCC*, 359 F.2d 994 (D.C.Cir.1966) (Fairness Doctrine challenge).

Here no such continuation is contemplated. What is at issue is simply an asserted under-enforcement of the Jefferson Radio policy, a policy intended to "enhanc[e] the deterrent effect of whatever substantive provision supports the attack on the incumbent licensee." *Coalition for the Preservation of Hispanic Broadcasting v. FCC*, 931 F.2d 73, 80 (D.C.Cir.1991). The only adverse impact on listeners of any such underenforcement would be a marginal reduction in the *in terrorem* effect of the policy on licensees, leading to some marginal increase in violations of FCC requirements. But just as in *Branton* whatever marginal weakening of the deterrent effect of a statute limiting indecent broadcasting might flow from a specific non-enforcement of that statute was not "immediate" enough to meet Article III standards, 993 F.2d at 909–10, so too is the impact of a mistaken failure to catch a Jefferson Radio violation. We note that if such a weak and indirect effect were enough, listeners *anywhere* could challenge *any* underenforcement of the policy.

We doubt that petitioners' alternative theory—competitor standing—is properly before us. Assuming that a footnote in petitioners' reply brief sufficiently raises such a theory, however, we reject it on the merits. Petitioners appear to argue that their ownership of a television station in the Orlando area makes them competitors to WTKS(FM). Even assuming in petitioners' favor that competition with a violator of FCC rules is more burdensome than competition with a true-blue follower, the effect of the FCC decision here is to bring about the complete cessation of that competition the moment that Press ceases to be the licensee. Thus, petitioners as competitors are left with irremediable past injury from allegedly illegal competition and future deterrence of such competition; both are as deficient as their equivalents for listener standing.

At bottom petitioners appear to seek the simple satisfaction of seeing the laws enforced—perhaps because years of litigation with Press have made them see their relation with it as a zero-sum game in which every blow to Press is a boon for petitioners. This is not the accepted reading of Article III.

We dismiss the petition.

*So ordered.*