Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 5, 2003       Decided January 9, 2004

No. 03-1028

KERM, INC.,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

———

On Petition for Review of an Order of the
Federal Communications Commission

———

*Dan J. Alpert* argued the cause and filed the briefs for petitioner.

*Louis E. Peraertz*, Special Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were *Robert H. Pate III*, Assistant Attorney General, *Robert B. Nicholson* and *Robert J. Wiggers*, Attorneys, *John A. Rogovin*, General Counsel, Federal Communi-

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

cations Commission, and *Daniel M. Armstrong*, Associate General Counsel.

Before: EDWARDS, SENTELLE, and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: Petitioner KERM, Inc. ("KERM") filed a complaint with the Federal Communications Commission ("FCC" or "Commission") alleging that radio station KAYH-FM ("KAYH") unlawfully aired 11 announcements that constituted commercial advertisements in violation of the Communications Act of 1934. The Commission found that 10 of the 11 announcements did not violate the Act. The Commission further held that no enforcement action was warranted with respect to the single remaining announcement that was found to be an impermissible advertisement. KERM seeks review of the Commission's decision.

We hold that KERM lacks standing under Article III to pursue this petition for review. KERM cannot establish standing as a listener of KAYH, because KERM alleges only a discrete, past violation of the Act. Nor can KERM demonstrate standing as a competitor of KAYH, because it has not indicated how, if at all, it has suffered any competitive injury as a result of that violation. Indeed, KERM alleges no particularized injury whatsoever, short of a generalized interest in the faithful enforcement of the law. We therefore dismiss the petition for review.

## I.  BACKGROUND

The Communications Act of 1934 ("Act") prohibits noncommercial educational broadcast stations from broadcasting "advertisements." 47 U.S.C. § 399b(b)(2) (2000). The Act defines prohibited advertisements as program material that is broadcast "in exchange for any remuneration" and "intended to promote any service, facility, or product" of for-profit entities. 47 U.S.C. § 399b(a). So long as they do not constitute advertisements, however, a noncommercial educational broadcast station may broadcast acknowledgments of donors or underwriters. Such acknowledgments may identify, but

not promote, the contributor's products, services, or business. *See Tri-State Inspirational Broad. Corp.*, 16 F.C.C.R. 16,800, 16,800 (2001). The Commission has articulated in various rules and orders specific guidelines regarding the difference between permissible underwriter announcements and impermissible commercial advertisements. *See generally Comm'n Policy Concerning the Noncommercial Nature of Educ. Broad. Stations*, 7 F.C.C.R. 827 (1992).

KAYH, operated by Family Vision Ministries, Inc. ("Family Vision"), is a noncommercial educational broadcast radio station located in Fayetteville, Arkansas. Petitioner KERM is the licensee and operator of several commercial radio broadcast stations in Arkansas whose listening audiences overlap with that of KAYH. On October 9, 2001, KERM filed a formal complaint with the Commission asserting that KAYH had aired 11 underwriter announcements during an August 30, 2001, football game that constituted impermissible commercial advertisements in violation of the Act. *See* Appendix ("App.") 1-5. KERM requested that the Commission conduct an investigation and impose a forfeiture on Family Vision in the amount of $2,000 per violation. App. 5.

Upon consideration of KERM's complaint, the FCC's Enforcement Bureau ("Bureau") ruled that 10 of the 11 disputed announcements did not violate the Act. *See* Family Vision Ministries, Inc., EB-01-IH-0629-KMS (May 15, 2002) (letter ruling), *reprinted in* App. 12-13. Although one announcement was found to constitute a prohibited advertisement, the Bureau concluded that no enforcement action was warranted because the single violation was an "isolated occurrence." App. 13. KERM filed an application for review before the Commission, arguing that the Bureau's ruling was arbitrary and capricious and contrary to the Act, case law, and Commission regulations. Family Vision filed an opposition to KERM's application for review, in which it stated that, immediately after the disputed announcements aired, it had replaced the announcements and instituted new review procedures to ensure compliance with the Act. *See* App. 27-28. The Commission denied KERM's application for review. *See Family Vision Ministries, Inc.*, 18 F.C.C.R. 1418 (2003),

*reprinted in* App. 46-48.  Specifically, the Commission agreed with the Bureau that 10 of the 11 announcements were permissible under the Act and that the remaining violation did not warrant the imposition of any sanction.  *Id.* at 1419, App. 47.  KERM filed this petition for review.

## II.  ANALYSIS

KERM lacks standing under Article III to challenge the Commission's order.  We therefore dismiss the petition for review.  To establish standing under Article III, a petitioner must demonstrate (1) an injury in fact that is (2) fairly traceable to the challenged action and (3) likely to be redressed by the requested relief.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998); *Jaramillo v. FCC*, 162 F.3d 675, 676 (D.C. Cir. 1998).  That a petitioner participated in administrative proceedings before an agency does not establish that the petitioner has constitutional standing to challenge those proceedings in federal court.  *See Fund Democracy, LLC v. SEC*, 278 F.3d 21, 27 (D.C. Cir. 2002).  Where a petitioner is not subject to the administrative decision it challenges, courts are particularly disinclined to find that the requirements of standing are satisfied.  *Branton v. FCC*, 993 F.2d 906, 910-11 (D.C. Cir. 1993); *see also Steel Co.*, 523 U.S. at 107; *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.").

A petitioner bears the burden of establishing its standing. *Steel Co.*, 523 U.S. at 104.  Under *Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002), we require petitioners whose standing is not self-evident to establish standing by the submission of affidavits or other evidence "at the first appropriate point in the review proceeding."  *Id.* at 900.  Where no motion to dismiss has been made, the petitioner's first opportunity will be its opening brief, not its reply brief.  *Id.* Although KERM was reminded of this obligation in the court's order establishing the briefing schedule for this case, *see KERM, Inc. v. FCC*, No. 03-1028 (D.C. Cir. Jun. 30, 2003),

*reprinted in* App. 49, KERM nonetheless failed to offer anything in its opening brief to support standing. In response to the FCC's brief, KERM belatedly asserted standing in its reply brief. But, even there, KERM offered nothing concrete to establish Article III standing.

KERM has provided no explanation for its failure to comply with *Sierra Club*. Even were we to excuse this oversight on the tenuous assumption that KERM reasonably failed to comprehend that standing was far from self-evident, there is nothing in the record of this case to indicate that KERM satisfies the requirements of Article III. Neither the record of administrative proceedings nor KERM's briefs before this court even assert that KERM has suffered any particularized injury.

KERM describes itself as a "listener" and "competitor" of KAYH, suggesting that it has standing on these bases. There is no doubt that both listeners and competitors may, in appropriate cases, demonstrate standing to challenge actions of the FCC under the Communications Act. *See New World Radio, Inc. v. FCC*, 294 F.3d 164, 170 (D.C. Cir. 2002) (competitor standing); *Huddy v. FCC*, 236 F.3d 720, 722 (D.C. Cir. 2001) (listener standing). In this case, however, KERM has offered nothing to support its assertion of standing on either ground.

KERM cannot prevail on a theory of listener standing because it challenges only a discrete, past injury and alleges no continuing violations. In *Branton*, we held that petitioners who challenged the FCC's refusal to take action against a radio station for unlawfully broadcasting indecent language did not have standing. 993 F.2d at 908. Noting that the petitioners were not themselves subject to the challenged decision, we held that petitioners could not satisfy the requirements of standing where they alleged only a discrete, past injury. *Id.* at 909-12. Similarly, in *Jaramillo*, we held that petitioners who sought review of an FCC decision authorizing assignment of a radio license to a third party had no standing to challenge the FCC's decision. 162 F.3d at 676-77. Again, we rejected the petitioners' claim to listener standing

because they challenged an irremediable past injury and asserted no ongoing violations. *Id.* at 677. We further held that the mere possibility of a marginal deterrent effect did not satisfy the requirements of Article III standing. *Id.*

As with the petitioners in these cases, KERM cannot establish standing here as a listener of KAYH (assuming a corporate entity can be a listener), because it has not alleged any continuing wrongs. Indeed, the record reflects that KAYH immediately took corrective measures after broadcasting the disputed announcements. *See* App. 27-28. Without any assertion of ongoing injury, KERM cannot establish listener standing. *Jaramillo*, 162 F.3d at 676-77; *Branton*, 993 F.2d at 909.

KERM fares no better under a theory of competitor standing. A party seeking to establish standing on this basis must demonstrate that it is "a *direct* and *current* competitor whose bottom line may be adversely affected by the challenged government action." *New World Radio*, 294 F.3d at 170. While a party that is "likely to be financially injured" by a Commission decision may have competitor standing to challenge Commission actions under the Act, *see FCC v. Sanders Bros. Radio Station*, 309 U.S. 470, 477 (1940), that party must make a concrete showing that it is in fact likely to suffer financial injury as a result of the challenged action, *see New World Radio*, 294 F.3d at 170-72; *see also Sanders Bros.*, 309 U.S. at 471-72 (finding standing where a party presented evidence of economic injury as a result of competition).

KERM might have satisfied the requirements of competitor standing if it had introduced evidence that KAYH's broadcast of the disputed announcements resulted in lost advertising revenues for KERM or otherwise adversely affected KERM's financial interests. KERM offered no such evidence. Rather, KERM vaguely asserts only that it competes with KAYH and that its own radio stations serve much of the same audience as KAYH. Such "[b]are allegations are insufficient . . . to establish a petitioner's standing to seek judicial review of administrative action." *Sierra Club*, 292 F.3d at 898; *see also New World Radio*, 294 F.3d at 170-72 (finding that a

petitioner lacked competitor standing where it did not allege any financial injury). KERM thus fails to establish standing on the basis of any competitive injury.

Rather than advancing any cognizable injury, KERM purports to act "as an interested party seeking to assist the Commission in its fair, reasonable, and equitable enforcement of its rules." Reply Br. at 2. While it is true that the Commission relies on public participation to assist in its enforcement of the Act, *see L.B. Wilson, Inc. v. FCC*, 397 F.2d 717, 719 (D.C. Cir. 1968), this does not obviate the need for a petitioner to establish Article III standing as a prerequisite to judicial review in federal court. And KERM cannot establish standing simply by asserting a role as public ombudsman. *See Sierra Club v. Morton*, 405 U.S. 727, 736-38 (1972). KERM has failed to assert any injury that is sufficiently unique as to distinguish KERM from any other public-minded potential litigant interested in ensuring the faithful enforcement of the Act. *See Steel Co.*, 523 U.S. at 107. This is insufficient to demonstrate standing under Article III.

In *Office of Communication of the United Church of Christ v. FCC*, 359 F.2d 994 (D.C. Cir. 1966) ("*UCC*"), we stated that the "traditionally narrow view of standing" should not preclude aggrieved members of the listening public from challenging FCC actions. *See id.* at 1000-01. KERM cites *UCC* in support of its assertion of standing. Even assuming that *UCC* is applicable to our analysis of KERM's constitutional standing, *see Rainbow/PUSH Coalition v. FCC*, 330 F.3d 539, 542 n.* (D.C. Cir. 2003); *UCC*, 359 F.2d at 1000 n.8, the case is easily distinguished. The petitioners in *UCC* proffered convincing evidence that the challenged FCC action would result in substantial and ongoing injuries. *See UCC*, 359 F.2d at 997-99 & 998 n.4. Having asserted only a single, past violation of the Act, KERM falls well short of this standard. *See Branton*, 993 F.2d at 910 (distinguishing *UCC* on the grounds that it involved allegations of continuing violations). The remaining cases KERM cites deal only with questions of statutory interpretation and prudential standing, *see Busse Broad. Corp. v. FCC*, 87 F.3d 1456, 1462-63 (D.C. Cir. 1996); *Maier v. FCC*, 735 F.2d 220, 227-30 & 229 n.13 (7th Cir. 1984),

and provide no support for KERM's claim of standing under Article III. KERM therefore has failed to establish standing to pursue this petition for review.

### III. CONCLUSION

For the foregoing reasons, we dismiss the petition for review.