**Slip Op. 06-154**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| TRUSTEES IN BANKRUPTCY OF NORTH AMERICAN RUBBER THREAD CO., INC., FILMAX SDN. BHD., HEVEAFIL SDN. BHD., and HEVEAFIL USA, INC., | |
| Plaintiffs, | Before: Richard W. Goldberg, Senior Judge |
| v. | |
| UNITED STATES, | Consol. Court No. 05-00539 |
| Defendant. | |

<u>OPINION</u>

[Motion to dismiss denied.]

Date: October 18, 2006

<u>Miller & Chevalier Chartered</u> (<u>Peter J. Koenig</u>) for Plaintiff Trustees in Bankruptcy of North American Rubber Thread Co., Inc.

<u>White & Case, LLP</u> (<u>Emily Lawson</u>) for Plaintiffs Filmax Sdn. Bhd., Heveafil Sdn. Bhd., and Heveafil USA, Inc.

<u>Peter D. Keisler</u>, Assistant Attorney General; <u>David M. Cohen</u>, Director, and <u>Jeanne E. Davidson</u>, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (<u>Stephen C. Tosini</u>) for Defendant United States.

**Goldberg, Senior Judge**: This case, which seeks judicial review of a refusal by the U.S. Department of Commerce (**"Commerce"**) to initiate a changed circumstances review of an antidumping duty order, is before the Court on a motion to dismiss for lack of subject matter jurisdiction.

## I.   BACKGROUND

**A.   The Antidumping Duty Order and Administrative Review**

On October 7, 1992, Commerce published an antidumping duty order on extruded rubber thread from Malaysia (the **"subject imports"**).  See Extruded Rubber Thread from Malaysia, 57 Fed. Reg. 46150 (Dep't Commerce Oct. 7, 1992) (antidumping duty order and amended final determination) (the **"Order"**).  By its terms, the Order applied to Plaintiffs Filmax Sdn. Bhd., Heveafil Sdn. Bhd., and Heveafil USA, Inc. (collectively, **"Heveafil"**).  Id.

Approximately six years later and at Heveafil's request, Commerce completed a periodic administrative review[1] of the Order for the period of October 1, 1995 through September 30, 1996.  See Extruded Rubber Thread from Malaysia, 63 Fed. Reg. 12752 (Dep't Commerce Mar. 16, 1998) (final results of administrative review).  The results of that administrative review were largely unfavorable to Heveafil.[2]  Id.

---

[1] A periodic review is an administrative process whereby Commerce, upon request by an interested party, must review an existing antidumping duty order and determine the appropriate amount of duty (if any) that should continue to apply to the imports under review.  See 19 U.S.C. § 1675(a)(1) (2000). When requested, Commerce must conduct at least one administrative review during each 12-month period beginning on the anniversary of the date of publication of the antidumping duty order.  Id.

[2] Heveafil challenged those results before this Court and then the U.S. Court of Appeals for the Federal Circuit (**"Federal**

**B.   The First Request for Changed Circumstances Review**

Dissatisfied with the results of the administrative review and noting dramatic changes in the makeup of the domestic industry in 2004, Heveafil requested that Commerce conduct a changed circumstances review.[3]  The basis for this request was Heveafil's observation that North American Rubber Thread Co., Inc. (**"NART"**),[4] the sole manufacturer of the domestic like product, had filed for bankruptcy and ceased operations.  Commerce granted Heveafil's request and initiated a changed circumstances review of the Order (the **"First Changed Circumstances Review"**).  See Extruded Rubber Thread from Malaysia, 69 Fed. Reg. 10980 (Dep't Commerce Mar. 9, 2004) (notice of changed circumstances review, preliminary results, and notice of intent to revoke).

Commerce preliminarily found that changed circumstances warranted revocation of the Order effective October 1, 2003,

---

**Circuit"**), which remanded the case back to this Court.  That case has been stayed pending the outcome of this case.

[3] A changed circumstances review is a statutorily required administrative process whereby Commerce, upon request, must review a final affirmative determination resulting in an antidumping duty order if an interested party has demonstrated the existence of changed circumstances sufficient to warrant review.  See 19 U.S.C. § 1675(b)(1) (2000).

[4] References to NART herein also encompass, where applicable, Plaintiff Trustees in Bankruptcy of North American Rubber Thread Co., Inc., the successor-in-interest to the now bankrupt domestic petitioner.

the first day of the then most recent period of administrative review and the only period for which an administrative review had not been completed.  Id. at 10981.  For its part, NART agreed with this conclusion, reasoning that the changed circumstances should only apply to unliquidated entries of the subject imports which had not already been evaluated under an administrative review.  See Issues and Decision Memorandum for the Changed Circumstances Review of Extruded Rubber Thread from Malaysia, Inv. No. A-557-805 (Dep't Commerce Aug. 11, 2004), available at http://ia.ita.doc.gov/frn/summary/ malaysia/E4-1895-1.pdf, at 5-7.  In contrast, Heveafil argued that Commerce should revoke the Order effective as of October 1, 1995, a much earlier date which would cover all unliquidated entries of the subject imports, including those which previously had been under administrative review.  Id. at 2-5.

    Commerce ultimately determined to revoke the Order at the later effective date of October 1, 2003.  See Extruded Rubber Thread from Malaysia, 69 Fed. Reg. 51989, 51989 (Dep't Commerce Aug. 24, 2004) (final results of changed circumstances review).[5]

**C.    The Second Request for Changed Circumstances Review**

---

[5] Heveafil appealed the results of the First Changed Circumstances Review to this Court.  That appeal has been stayed pending the outcome of this case.

Notwithstanding its participation in the First Changed Circumstances Review and its support for the results of that review, on February 18, 2005, NART requested that Commerce initiate an additional changed circumstances review (the **"Second Changed Circumstances Review"**).  See Compl. dated Dec. 6, 2005, Ex. 2 (NART's Request for Changed Circumstances Review dated Feb. 18, 2005) 1.  In this request, NART sought retroactive revocation of the Order to October 1, 1995 – the effective date requested by Heveafil (and opposed by NART) in the First Changed Circumstances Review.  Id.  The basis for this request was NART's representation that it no longer possessed an interest in the enforcement or existence of the Order as of that earlier date.  Id.

On June 15, 2005, Commerce notified NART by letter ruling of its refusal to initiate the requested Second Changed Circumstances Review.  See Compl. dated Dec. 6, 2005, Ex. 1 (Commerce's Response to Request for Changed Circumstances Review dated June 15, 2005) 1.  Commerce explained that it could not conduct the requested review because "1) all administrative reviews of [the subject imports] have been completed; and 2) there is no existing order for which to initiate a changed circumstances review . . . ."  Id.

D.   The Instant Action

On October 3, 2005 and December 6, 2005, NART and Heveafil respectively commenced separate actions in this Court, both challenging Commerce's refusal to initiate the Second Changed Circumstances Review.  See Compl. dated Oct. 3, 2005; Compl. dated Dec. 6, 2005.  Those actions were consolidated into the instant action, which seeks to invoke the Court's jurisdiction pursuant to 28 U.S.C. § 1581(i).

On March 3, 2006, Defendant the United States filed a motion to dismiss for lack of subject matter jurisdiction under USCIT Rule 12(b)(1) (**"Def.'s Mot."**).  NART and Heveafil timely filed responses thereafter (respectively, **"NART's Resp."** and **"Heveafil's Resp."**), followed by a reply brief from Defendant (**"Def.'s Reply"**).  This motion is thus now properly before the Court.

## II.  DISCUSSION

### A.  Guiding Principles for Exercise of Subject Matter Jurisdiction under 28 U.S.C. § 1581(i)

Like the rest of the Federal judiciary, the U.S. Court of International Trade (**"CIT"**) is a court of limited jurisdiction and, as such, has the perpetual obligation to "determine that the matter brought before it remains within the metes and bounds of such delimitation." Agro Dutch Indus. Ltd. v. United States, 29 CIT ___, ___, 358 F. Supp. 2d 1293, 1294 (2005).  The CIT's principal jurisdictional statute is 28

U.S.C. § 1581.  Subsections (a) through (h) of this statute grant the CIT jurisdiction over specific types of commonly-occurring disputes involving import transactions.  Subsection (i) – the so-called "residual" grant of jurisdiction – is a

> general grant of jurisdiction for any civil action against the United States, its agencies, or its officers, that arises out of any law of the United States providing for, inter alia, "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue . . . [or the] administration and enforcement with respect to the matters referred to in [section 1581]."

Duferco Steel, Inc. v. United States, 29 CIT ___, ___, 403 F. Supp. 2d 1281, 1284-85 (2005) (quoting 28 U.S.C. § 1581(i) (2000)).

Recognizing section 1581(i)'s broad jurisdictional grant, this Court recently noted that "[t]he breadth of the residual jurisdiction could, if not interpreted restrictively, threaten to strip subsections (a) through (h) of any operative force." Id. at ___, 403 F. Supp. 2d at 1285.  Consequently, courts construing this statute have repeatedly held that "'[s]ection 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate.'"  Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992) (quoting Miller & Co. v. United States, 824 F.2d 961,

963 (Fed. Cir. 1987)).  Thus, access to the CIT's residual

jurisdiction requires the exhaustion of all adequate

administrative remedies that could have resulted in a cause of

action arising under subsections (a) through (h) of 28 U.S.C.

§ 1581.[6]  See id.  The plaintiff has the burden of proving that

_____

[6] Access to the CIT's residual jurisdiction also quite
obviously requires the satisfaction of all constitutional
requirements for bringing an action before a Federal court
established under Article III of the U.S. Constitution.  See
U.S. Const. art. III, § 2, cl. 1; cf. 28 U.S.C. § 251 (2000)
(establishing the CIT as an Article III court).  One such
requirement is that an action must be a "case" or
"controversy" within the meaning of that constitutional
provision.  U.S. Const. art. III, § 2, cl. 1.  Among other
things, this requirement calls for a plaintiff to have
standing to raise its claim to the court.  Here, it is dubious
that NART has the requisite constitutional standing to bring
this claim, as the papers currently before the Court do not
establish that NART has suffered some injury-in-fact caused by
Defendant's refusal to initiate the Second Changed
Circumstances Review.  See Lujan v. Defenders of Wildlife, 504
U.S. 555, 560-61 (1992) (describing three-part injury-in-fact
test for Article III standing); Compl. dated Oct. 3, 2005 at 2
(alleging NART's standing solely on basis of participation in
administrative proceedings as interested party); KERM, Inc. v.
FCC, 353 F.3d 57, 59 (D.C. Cir. 2004) ("That a petitioner
participated in administrative proceedings before an agency
does not establish that the petitioner has constitutional
standing to challenge those proceedings in federal court.").
However, the Court need not dismiss one plaintiff for lack of
constitutional standing where another plaintiff seeking the
same relief has standing sufficient to satisfy Article III's
case-or-controversy requirement.  See, e.g., Rumsfeld v. Forum
for Academic & Institutional Rights, Inc., 548 U.S. ___, ___,
126 S. Ct. 1297, 1303 (2006); Bowsher v. Synar, 478 U.S. 714,
721 (1986).  Here, Heveafil undeniably has the requisite
constitutional standing to bring this claim.  Heveafil has
been "adversely affected or aggrieved by [Commerce's] refusal
to conduct a changed circumstances review of [the Order]"
which, if not improperly withheld as alleged by Heveafil,
could have resulted in revocation of the Order and "refund

the assertion of the CIT's residual jurisdiction is proper when a defendant moves to dismiss an action under USCIT Rule 12(b)(1) for lack of subject matter jurisdiction. See United States v. Gold Mountain Coffee, Ltd., 8 CIT 247, 248-49, 597 F. Supp. 510, 513 (1984).

**B.   Availability of Jurisdiction under 28 U.S.C. § 1581(i)**

In light of these guiding principles, the Court next considers Defendant's motion to dismiss, which questions whether NART and Heveafil have properly invoked the CIT's residual jurisdiction in order to gain judicial review of Commerce's refusal to initiate the Second Changed Circumstances Review.

*1.   Analysis of Underlying Statutory/Regulatory Framework*

The answer to this question first requires an understanding of the underlying statutory/regulatory framework. Pursuant to 19 U.S.C. § 1675(d)(1), Commerce may revoke an antidumping duty order (in whole or in part) based on a review of the underlying antidumping determination under 19 U.S.C. § 1675(b)(1) - i.e., a changed circumstances review. This latter provision requires Commerce to perform a changed

---

[of] the antidumping cash deposits made by Heveafil" for entries covered by the Order. Compl. dated Dec. 6, 2005 ¶ 3; see also Ont. Forest Indus. Ass'n v. United States, 30 CIT ___, Slip Op. 06-123, at 28-29 (Aug. 2, 2006) (identifying economic injury from, inter alia, failure to receive tariff refund as basis for standing). As such, the Court need not consider the standing issue as to NART.

circumstances review upon receipt of a request which shows changed circumstances sufficient to warrant such a review.[7] Congress expressly provided for judicial review by the CIT of the substantive changed circumstances determination by Commerce.  See 19 U.S.C. § 1516a(a)(2)(B)(iii) (2000); 28 U.S.C. § 1581(c) (2000).  However, it is not clear whether there is a grant of judicial review for a decision by Commerce not to initiate a changed circumstances review in the first place.  This type of decision by Commerce was previously expressly listed as a reviewable determination pursuant to 19 U.S.C. § 1516a(a)(1), but was deleted from that statute by an amendment in 1984.  See Pub. L. No. 98-573, § 623(a)(1), 98 Stat. 2948, 3040 (1984) (the **"1984 Amendment"**).

The parties disagree as to whether the 1984 Amendment was intended to work as a prohibition on judicial review of all of Commerce's refusals to initiate changed circumstances review.

---

[7]  In its regulations, Commerce has elaborated on the type of circumstances that would warrant review under this statutory provision.  These regulations state that Commerce will conduct a changed circumstances review of an antidumping duty determination and may revoke a resulting order (in whole or in part) pursuant to such review if, inter alia, Commerce determines that "[p]roducers accounting for substantially all of the production of the domestic like product to which the order . . . pertains have expressed a lack of interest in the order, in whole or in part . . . ."  19 C.F.R. § 351.222(g)(1)(i) (2005); see also id. § 351.216.  The Federal Circuit has held that Commerce is authorized to revoke an antidumping duty order on these grounds.  See Or. Steel Mills Inc. v. United States, 862 F.2d 1541, 1542 (Fed. Cir. 1988).

This issue was previously taken up briefly in AOC

International v. United States, 17 CIT 1412, 1415 (1993)

(Restani, J.), where the court made the following observation

in dicta:

> The court cannot say definitively that every
> Commerce decision not to initiate a changed
> circumstances review is exempt from 28 U.S.C. §
> 1581(i) review, but it seems fairly clear that
> Congress intended to insulate all but the most
> extraordinary decisions of this type from review on
> more than an annual basis. . . . The court finds
> that in view of the statutory change enacted by
> Congress, 28 U.S.C. § 1581(i) jurisdiction should
> attach, if at all, only upon a particularly strong
> showing that adequate remedies are unavailable.

A more definitive interpretation of the effect of the 1984

Amendment was not required in AOC. The AOC court went on to

find that the availability of adequate prospective relief for

plaintiffs – in the form of a periodic review by Commerce or a

changed circumstances review by the U.S. International Trade

Commission ("ITC")[8] – would serve as a bar to invocation of the

---

[8] Like Commerce, the ITC has the authority to reconsider its antidumping determinations based on changed circumstances. See 19 U.S.C. § 1675(b)(1) (2000). One ITC determination subject to changed circumstances review involves a finding of material injury or threat of material injury to a domestic industry as a result of dumped imports. See id. § 1673(2). If, for example, an injured domestic industry ceased to exist, then this could constitute changed circumstances warranting reconsideration of the ITC's injury determination. If the ITC chose to reverse its injury determination based on these changed circumstances, then the underlying antidumping duty order would be revoked. See id. § 1675(d)(1); see also 19 C.F.R. § 351.222(h) (2005).

CIT's residual jurisdiction even without the additional complication of the 1984 Amendment.  Id. at 1416.

### 2.   *Analysis of Available Prospective Relief*

Unlike AOC, here there is no possibility of prospective relief available for plaintiffs.  There are no subsequent, statutorily required administrative reviews of the underlying antidumping determination (from which an appeal to the CIT would clearly lie pursuant to 28 U.S.C. § 1581(c)).  It is perhaps possible that NART or Heveafil could petition Commerce for another discretionary changed circumstances review, but there is no reason to believe that such a request would meet with a fate different from that of the Second Changed Circumstances Review at issue here.  Also, NART and Heveafil

---

It is noteworthy that, as demonstrated by AOC and this case, the same result could be achieved by petitioning Commerce for a changed circumstances review, since Commerce may reconsider one of its own antidumping determinations if there are no longer any interested parties.  See supra note 7. This overlap of authority between Commerce and the ITC is unusual.  A significant difference between these two administrative remedies is that Congress expressly made the ITC's decision not to initiate a changed circumstances review subject to judicial review by the CIT.  See 19 U.S.C. § 1516a(a)(1)(B) (2000); 28 U.S.C. § 1581(c) (2000).  However, regardless of whether Commerce or the ITC makes the changed circumstances determination resulting in revocation of an antidumping duty order (which is not a transition order), Commerce is the sole agency charged with effectuating that revocation.  See 19 U.S.C. § 1675(d)(1) (2000).  Although largely a ministerial role, Commerce's exclusive authority includes establishing the effective date of revocation.  See id. § 1675(d)(3); Okaya (USA), Inc. v. United States, 27 CIT ___, ___, Slip Op. 03-130 at 4 (Oct. 3, 2003).

could not separately seek redress from the ITC in this case, as only Commerce is vested with the authority to determine the effective date for revocation of the Order based on changed circumstances.  See supra note 8.  In short, on a prospective basis, NART and Heveafil are seeking safe harbor in what indeed appears to be their "port of last resort."  Duferco, 29 CIT at ___, 403 F. Supp. 2d at 1285.

### 3.    Analysis of Formerly Available Relief

However, on a retrospective basis, the question remains whether NART and Heveafil could have sought the more certain shelter of one of the CIT's specific grants of jurisdiction through better maneuvering of the relevant administrative channels.  "A plaintiff waives its right to invoke section 1581(i)'s 'manifest inadequacy' safe harbor if jurisdiction under another subsection of section 1581 could have been available but no longer is available."  Id. at ___, 403 F. Supp. 2d at 1286.  The AOC court also noted this point, finding that the CIT's residual jurisdiction was further precluded in that case by the past availability of an adequate (if not ideal) administrative remedy subject to judicial review.[9]  AOC, 17 CIT at 1415-16.  To this point, Defendant

---

[9] The adequate alternative remedy identified in AOC was the plaintiff's ability to challenge the standing of the petitioner as a representative of the domestic industry in the most recent annual administrative review.  AOC, 17 CIT at

argues that "not only could [P]laintiffs have availed themselves of the same remedy pursuant to 28 U.S.C. § 1581(c), but Heveafil has availed itself of that remedy." Def.'s Mot. 9. That is, the First Changed Circumstances Review squarely addressed what Defendant characterizes as the substantive issue in this case: the appropriate effective date for revocation of the Order. In Defendant's view, that proceeding afforded the parties an adequate forum to make their arguments to Commerce and provided an assured vehicle to appeal the substantive issue to the CIT. Id. Defendant contends that NART should have supported the earlier effective date advocated by Heveafil during the First Changed Circumstances Review in order to properly invoke the CIT's jurisdiction. Id. NART and Heveafil counter that the First Changed Circumstances Review and resulting appeal by Heveafil were (and will continue to be) inadequate remedies because it was not temporally possible for either of these proceedings to take into consideration the critical changed circumstance and true substantive issue in this case: the effect of NART's subsequent decision to no longer support the Order from

---

1416. The court noted that "[i]f the question of standing to pursue the administrative review had been resolved in plaintiff's favor, it would have led to a request for revocation based on lack of interested parties or lack of injury . . . ." Id. Such a challenge would not have been possible in this case because NART's bankruptcy took place after the last annual administrative review of the Order.

October 1, 1995 onward.  See NART's Resp. 9-11; Heveafil's Resp. 5-10.

In virtually every other context imaginable, a sudden volte-face by a party would not render inadequate a previous opportunity to challenge agency action.  For example, a party that at first acquiesces to an agency determination involving an import transaction, thereby foregoing an appeal pursuant to 28 U.S.C.  1581(a)-(h), would be summarily denied later judicial review under the CIT's residual jurisdiction if it were sought solely on the basis of a change of heart about the wisdom of that acquiescence.  See, e.g., Siaca v. United States, 754 F.2d 988, 991-92 (Fed. Cir. 1985) (defendant estopped from arguing equitable claim against customs officials for failure to subject issue to available administrative procedures).

However, this case is unique because a change of heart by the domestic industry is a well-established reason for revisiting an antidumping determination through the changed circumstances review process.  See, e.g., 19 C.F.R. § 351.222(g) (2005) (regulation governing Commerce changed circumstances review); Porcelain-on-Steel Cookware from Mexico, 67 Fed. Reg. 19553, 19554 (Dep't Commerce Apr. 22, 2002) (final results of changed circumstances review based on industry change of heart); Or. Steel Mills, 862 F.2d at 1545

(upholding final results of changed circumstances review based on industry change of heart).  Importantly, neither the statute nor any of these sources places limits on when that change of heart must occur, or how often.  See Okaya (USA), 27 CIT at ___, Slip Op. 03-130 at 3 (noting that request for changed circumstances review "may be made at any time").

Viewed in this light, Defendant's argument that NART had only one opportunity to request or participate in changed circumstances review based on reconsideration of its support of the Order must fail.  Put simply, nothing in the statutory or regulatory framework requires the domestic industry to speak once and then forever hold its peace.  The First Changed Circumstances Review antedated NART's latest change of heart – a change of heart which NART was entitled to make (and seek agency review based on) at any time.  Because of this timing, the First Changed Circumstances Review (and any subsequent case brought under 28 U.S.C. § 1581(c) reviewing that determination) was a manifestly inadequate remedial forum for NART and Heveafil to seek review of the substantive issue at the core of this case: the appropriate effective date for revocation of the Order in light of the domestic industry's newfound lack of support for the Order.  The request for the Second Changed Circumstances Review was therefore the earliest opportunity for NART and Heveafil to seek Commerce's review of

this issue.  NART and Heveafil dutifully exhausted this
administrative remedy before attempting to invoke the CIT's
residual jurisdiction.  Under these circumstances, another
subsection of section 1581 was not, and could not have been,
available.[10]

### 4.    *Analysis of the Effect of the 1984 Amendment*

In light of the foregoing, the Court provisionally
concludes that Heveafil and NART have properly invoked the
CIT's residual jurisdiction in this case.  Consequently, the
final issue squarely before the Court is whether this judicial
review has been otherwise foreclosed by the 1984 Amendment.
Defendant contends that the 1984 Amendment evinces Congress'
intent to foreclose judicial review of Commerce's refusals to
initiate changed circumstances review.  Def.'s Mot. 5-6.  As
in AOC, Defendant argues that, by deleting this type of agency
action from among those within the CIT's specific

---

[10] The Court additionally notes that, because Commerce did not
publish its refusal to initiate the Second Changed
Circumstances Review in the Federal Register, there is also no
current basis for jurisdiction under 28 U.S.C. § 1581(c).  See
19 U.S.C. § 1516a(a)(2)(B)(iii) (specifying certain final
determinations made in connection with changed circumstances
review as reviewable determinations under 28 U.S.C. §
1581(c)); id. § 1516a(a)(2)(A)(i)(I) (2000) (authorizing
commencement of 28 U.S.C. § 1581(c) action within thirty days
of Federal Register publication of notice of relevant agency
action); accord AOC, 17 CIT at 1414.  Neither NART nor
Heveafil has requested that the Court order Commerce to
publish its decision not to initiate the Second Changed
Circumstances Review.

jurisdiction, Congress clearly intended to make these refusals "purely discretionary" and "always nonreviewable."  AOC, 17 CIT at 1414.

Congress typically communicates its intent to foreclose judicial review in one of two ways: (1) through the divestiture of federal subject matter jurisdiction or (2) through the preclusion of a specific cause of action.  See Whitman v. DOT, 547 U.S. ___, ___, 126 S. Ct. 2014, 2015 (2006) (framing the question as whether the relevant statute removes jurisdiction given to a federal court or otherwise precludes a class of litigants from pursuing remedies beyond those listed in the statute).

By bringing its motion to dismiss under USCIT Rule 12(b)(1), Defendant has alleged congressional foreclosure of judicial review of the first variety: that the 1984 Amendment divested the CIT of federal subject matter jurisdiction. However, the 1984 Amendment did not directly alter the CIT's principal jurisdictional statute, 28 U.S.C. § 1581.  Rather, the 1984 Amendment modified the text of 19 U.S.C. § 1516a, a statute which enumerates the various agency determinations reviewable by the CIT under subsection (c) of 28 U.S.C. § 1581.  See 28 U.S.C. § 1581(c) (2000).  An agency determination identified in 19 U.S.C. § 1516a as reviewable under subsection (c) is not reviewable under subsection (i).

See id. § 1581(i).  Accordingly, a change to the determinations listed in 19 U.S.C. § 1516a may affect the CIT's residual jurisdiction by either expanding or contracting the types of actions potentially reviewable under subsections (c) and (i).  Here, the 1984 Amendment removed a determination from 19 U.S.C. § 1516a, thereby rendering the determination unreviewable under subsection (c) but potentially reviewable under subsection (i).

What the foregoing discussion reveals is that the relationship between 19 U.S.C. § 1516a and 28 U.S.C. § 1581 is certainly close – but not particularly unusual in the Federal judicial system.  It mirrors the familiar relationship which exists between 28 U.S.C. § 1331, the statute conferring federal question jurisdiction to district courts, and numerous Federal statutes giving rise to civil actions reviewable under that broad grant of jurisdiction.  When Congress restricts the scope of one of these latter statutes, the district courts are not divested, in whole or in part, of federal question jurisdiction.  See Burks v. Lasker, 441 U.S. 471, 476 n.5 (1979) (noting that "whether a cause of action exists is not a question of jurisdiction").  From this perspective, the Court views 19 U.S.C. § 1516a as a statute that creates causes of

action reviewable under the CIT's jurisdictional statute.[11]  It

follows that, when Congress adjusts the scope of 19 U.S.C. §

1516a, the CIT is not divested of its subject matter

jurisdiction; rather, Congress makes a change to the causes of

action subject to review under that jurisdiction.

The Court therefore understands Defendant's argument as

alleging the preclusion of a specific cause of action (i.e.,

the review of Commerce's refusal to initiate changed

circumstances review), rather than the divestiture of subject

matter jurisdiction, and will analyze the remainder of

Defendant's motion as such.[12]

---

[11] This conclusion also finds support in a number of other
sources.  See, e.g., 19 U.S.C. § 1516a(e) (2000) (ordering
liquidation in accordance with final court decision "[i]f the
cause of action is sustained") (emphasis added); Co-Steel
Raritan, Inc. v. ITC, 357 F.3d 1294, 1304 (Fed. Cir. 2004)
(characterizing determinations listed in 19 U.S.C. § 1516a as
causes of action); Fujitsu Ten Corp. of Am. v. United States,
21 CIT 104, 109, 957 F. Supp. 245, 249-50 (1997) (same), aff'd
sub nom. Sandvik Steel Co. v. United States, 164 F.3d 596
(Fed. Cir. 1998); H.R. Rep. No. 96-1235, at 47 (1980),
reprinted in 1980 U.S.C.C.A.N. 3729, 3759 (noting 28 U.S.C. §
1581(i) was never intended to create new causes of action).

[12] Because the standards of review for motions to dismiss for
lack of subject matter jurisdiction (USCIT Rule 12(b)(1)) and
motions to dismiss for failure to state a claim (USCIT Rule
12(b)(5)) may differ, courts must be mindful of the important
procedural due process interests of litigants to be able to
respond to arguments.  Cf. Thoen v. United States, 765 F.2d
1110, 1114-15 (Fed. Cir. 1985) (discussing the due process
implications of converting a motion to dismiss under Rule
12(b)(6) of the federal rules into a motion for summary
judgment under Rule 56).  How a court characterizes a motion
to dismiss may affect the litigants' substantial rights.  A

Although this type of agency determination no longer gives rise to a cause of action under 19 U.S.C. § 1516a, another statute - the Administrative Procedure Act (**"APA"**) - creates a cause of action for review of "final agency action for which there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704 (2000). However, even the APA's general cause of action is unavailable where "(1) statutes preclude judicial review; or (2) agency action is committed to agency

---

dismissal for failure to state a claim goes to the merits of an action, and will have preclusive effect and serve as a bar to future litigation. However, when converting a Rule 12(b)(1) motion into a Rule 12(b)(5) motion does not deprive a litigant of the opportunity to defend itself or its claim, notice of conversion is unnecessary. Accord Less v. Lurie, 789 F.2d 624, 625 n.1 (8th Cir. 1986). Such is the case here. Defendant has made a facial challenge to the Court's jurisdiction. A facial challenge addresses the sufficiency of the pleadings, does not require fact-finding by the judge, and applies the same standard of review as a challenge to the the underlying cause of action. See Morrison v. Amway Corp., 323 F.3d 920, 925 n.5 (11th Cir. 2003); Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir. 1987). Further, the jurisdictional question and the cause of action question, in this case, are simply two iterations of the same fundamental question: does the 1984 amendment impliedly preclude the asserted APA action? In such circumstances, there is no unfair surprise to NART and Heveafil. Accordingly, the Court will proceed with its analysis of the remainder of Defendant's motion by assuming "all well-pled factual allegations are true" and construing "all reasonable inferences in favor of the nonmovant" to determine whether the complaint sets forth facts sufficient to support a claim. Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991) (discussing standard of review for motion to dismiss for failure to state a claim).

discretion by law." Id. § 701(a) (2000).[13]  Under Defendant's

theory, 19 U.S.C. § 1516a, as modified by the 1984 Amendment,

should be construed as a statute precluding judicial review of

Commerce's refusals to initiate changed circumstances review

under the APA.[14]  If so, even with the CIT's residual

---

[13] As Heveafil notes, an APA cause of action has previously been found to lie in "cases of agency inactivity" resulting from a refusal to perform a requested review.  Heveafil's Resp. 5 (citing Viraj Forgings Ltd. v. United States, 26 CIT 513, 206 F. Supp. 2d 1288 (2002) (reviewing Commerce refusal to initiate a requested periodic administrative review based on allegedly improper review request)).  The Viraj court found it appropriate to review that APA cause of action under the CIT's residual jurisdiction.  Id. at 519, 206 F. Supp. 2d at 1294.  However, unlike this case, the Viraj court was not confronted with the question of whether review of that particular APA cause of action was precluded by another statute.  As such, Viraj is of limited relevance to this case, standing simply for the principle (conceded by Defendant) that the APA typically provides the cause of action in 28 U.S.C. § 1581(i) cases.  See Def.'s Reply 6.  Whether an APA cause of action may actually lie in a case invoking the CIT's residual jurisdiction depends on an analysis of the two factors in 5 U.S.C. § 701(a) (unless waived, as in Viraj).

[14] In its reply brief, Defendant also argues that this case is exempt from review as an APA cause of action because it involves a matter "committed to agency discretion" by law.  Def.'s Reply 6 (quoting 5 U.S.C. § 701(a)(2)).  Specifically, Defendant notes that "an agency's refusal to reopen a closed case is generally committed to agency discretion . . . ."  Id. (quoting Your Home Visiting Nurse Servs. v. Shalala, 525 U.S. 449, 455 (1999)).  Defendant characterizes the underlying administrative proceedings as closed because "the [O]rder had already been revoked when [NART] requested a changed circumstances review . . . ."  Id.  As such, Defendant argues that Commerce was "simply exercis[ing] its wide discretion to refuse to reopen closed proceedings."  Id.
 Setting aside the important question of procedural fairness raised by Defendant's presentation of this argument for the first time in its reply brief, see Novosteel SA v. United

jurisdiction having been properly invoked, the Court would be

unable to entertain NART and Heveafil's claim.  Accord Am. Air

Parcel Forwarding Co. v. United States, 1 CIT 293, 296, 515 F.

Supp. 47, 51 (1981) ("Although the [CIT] may have subject

matter jurisdiction, there remains the possibility that a

particular complaint may not state a cause of action upon

which relief may be granted.").

    "Whether and to what extent a particular statute

precludes judicial review is determined not only from its

---

States, 284 F.3d 1261, 1274 (Fed. Cir. 2002), the Court
observes that the propriety of judicial review of an agency's
refusal to reopen a closed case based on changed circumstances
is well established.  See Interstate Commerce Comm'n v. Bhd.
of Locomotive Eng'rs, 482 U.S. 270, 278 (1987) ("[A]ll of our
cases entertaining review of a refusal to reopen appear to
have involved petitions alleging 'new evidence' or 'changed
circumstances' that rendered the agency's original order
inappropriate.").  In other words, agency discretion is
curtailed in the face of changed circumstances.  Defendant
attempts to distinguish this case from Interstate Commerce
Comm'n on the grounds that this case involves "changed changed
circumstances."  Def.'s Reply 7.  However, Defendant cites no
statutory or regulatory support for this distinction, and the
Court is likewise aware of none.  Further, the Court questions
whether there is even factual support for this distinction.
The First Changed Circumstances Review was requested by
Heveafil to address the issue of the domestic industry's
bankruptcy.  The Second Changed Circumstances Review was
requested by NART to address the issue of the domestic
industry's lack of interest in the Order.  As such, the two
requests for changed circumstances review were made by
different parties and had different triggering events.  It is
not clear how these facts lead to the characterization of
"changed changed circumstances" proposed by Defendant.  For
these reasons, the Court rejects Defendant's belated argument
that an APA cause of action is foreclosed in this case due to
agency discretion with respect to reopening closed cases.

express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345 (1984); see also United States v. Fausto, 484 U.S. 439, 444 (1988) (noting that courts examine "the purpose of the [relevant law], the entirety of its text, and the structure of review that it establishes"); Bowen v. Mich. Acad. Of Family Physicians, 476 U.S. 667, 672-73 (1986). When a court considers the potential preclusion of an APA action in light of the factors enumerated in Block, it must be remembered that "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." Abbott Labs. v. Gardner, 387 U.S. 136, 140 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977). In Abbott Laboratories, the Supreme Court stated further that "only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review."[15] Id. at 141 (quotation marks omitted). Like all presumptions, this presumption "may be overcome by, inter alia, specific language or specific

---

[15] The "clear and convincing evidence" standard is not meant in the strict evidentiary sense, see Block, 467 U.S. at 350-51, but rather serves as a reminder that courts should decline to review a cause of action only where Congress has clearly exhibited its intent to preclude that cause of action.

legislative history that is a reliable indicator of congressional intent, or a specific congressional intent to preclude judicial review that is fairly discernible in the detail of the legislative scheme."  Bowen, 476 U.S. at 673 (quotation marks omitted).

Block instructs courts to look to the express language of the statute and the structure of the statutory scheme.  The Court agrees with the plaintiffs' contention that there is no express language of the statute specifically precluding judicial review of Commerce decisions not to initiate changed circumstances reviews.  See Heveafil's Resp. 7; NART's Resp. 4.  However, the statutory scheme does provide important context.  19 U.S.C. § 1516a lists determinations made by Commerce and the ITC in the course of antidumping and countervailing duty proceedings that Congress has expressly subjected to judicial review.  Both parties agree that the current version of 19 U.S.C. § 1516a cannot be construed to include Commerce's refusal to initiate changed circumstances review as an agency determination subject to such review.[16]

---

[16] See Def.'s Mot. 5 ("Congress specifically amended 19 U.S.C. § 1516a to remove judicial review of a determination by Commerce not to initiate a changed circumstances review."); Heveafil's Resp. 4-5 ("19 U.S.C. § 1516a(a)(2)(B) . . . does not provide an avenue for parties to challenge [Commerce's] failure to initiate a changed circumstances review determination."); NART's Resp. 4 ("[T]his appeal is not specifically covered by § 1581(a)-(h).").

The absence of the Commerce refusal to initiate from the list gives rise to a negative inference that Congress may have intended to preclude judicial review of that determination. The Supreme Court has recognized the "longstanding principle that a statute whose provisions are finely wrought may support the preclusion of judicial review, even though that preclusion is only by negative implication." Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 34 n.3 (2000) (citing Fausto, 484 U.S. at 452; Block, 467 U.S. at 351; Switchmen's Union of N. Am. v. Nat'l Mediation Bd., 320 U.S. 297, 305-06 (1943)).

This negative inference is supported by the fact that the omission was not the result of congressional inadvertence, but was instead the intended product of the 1984 Amendment. Before Congress amended 19 U.S.C. § 1516a in 1984, that statute had expressly permitted CIT review of "a determination by the administering authority or the Commission . . . not to review an agreement or a determination based upon changed circumstances . . . ." 19 U.S.C. § 1516a(a)(1)(B) (1982). The 1984 Amendment deleted reference to the administering authority (i.e., Commerce) – thereby deliberately removing Commerce's refusal to initiate changed circumstances review from the list of expressly reviewable determinations. Congress acted with precision when revising 19 U.S.C. § 1516a

to exclude this particular agency determination, and this exactitude suggests that Congress may have meant to remove all possibility of judicial review of this agency determination, rather than shift the locus of judicial review from section 1516a to the APA.

Moreover, it is noteworthy that Congress did not similarly excise a refusal to initiate changed circumstances review by the ITC from 19 U.S.C. § 1516a's list of reviewable determinations.  This agency decision remains an expressly reviewable determination even after the 1984 Amendment.  See 19 U.S.C. § 1516a(a)(1)(B) (2000).  Congress carefully drew a deliberate distinction between the two categories of refusals to initiate changed circumstances review arising under the antidumping duty statute.  One category (ITC refusals) gives rise to an express cause of action; the other category (Commerce refusals) does not.  Thus, the "structure of the statutory scheme," Block, 467 U.S. at 345, lends some support to Defendant's contention that Congress intended to preclude this case.

Block also instructs courts to examine the legislative history of the relevant statute.  The legislative history of the 1984 Amendment provides no explanation for the disparate treatment of ITC and Commerce refusals to initiate changed circumstances review, but does shed some light on Congress'

general motivation.  The U.S. House of Representatives Ways and Means Committee report described the change to 19 U.S.C. § 1516a as "prohibit[ing] interlocutory appeals of determinations made during an annual review proceeding under section 751.  Such appeals would instead occur after a final determination has been made by [Commerce] or the ITC."  H.R. Rep. No. 98-725, at 46-47 (1984), reprinted in 1984 U.S.C.C.A.N. 5127, 5173-74.  The Committee noted further that "[t]he purpose of eliminating interlocutory judicial review is to eliminate costly and time-consuming legal action where the issue can be resolved just as equitably at the conclusion of the administrative proceedings."  Id. at 47, 1984 U.S.C.C.A.N. at 5174.

The congressional record itself similarly demonstrates that the animating purpose of the 1984 amendment was Congress' concern with interlocutory appeals of determinations during administrative review proceedings.  See 1984 Amendment (entitled "Elimination of Interlocutory Appeals").  When 19 U.S.C. § 1516a was expanded in 1979 to authorize judicial review of interlocutory orders, Congress hoped that the appeals would help refine and perfect the record, leading to better final determinations with fewer errors.  See H.R. Rep. No. 98-725, at 47, 1984 U.S.C.C.A.N. at 5174.  However, by 1984 Congress had determined that the apparatus for

administrative-judicial review of antidumping and countervailing duty determinations was collapsing under the weight of endless appeals of intermediate determinations. See id. Domestic and importing interests alike lamented that "the many interlocutory appeals [were] costly and unnecessary[,]" id., and Congress endeavored to address their concerns.

To best understand this legislative history, it is necessary to revisit the underlying administrative framework. Congress was correct that the vast majority of refusals to initiate changed circumstances review constitute intermediate agency action. In all but the rarest of cases, a request for changed circumstances review may be followed by an administrative review. An administrative review (1) may be requested every twelve months by an interested party, (2) must be initiated by Commerce upon proper request, and (3) must conclude in a final determination reviewable by the CIT. See 19 U.S.C. § 1675(a)(1) (2000); id. § 1516a(a)(2)(B)(iii); 28 U.S.C. § 1581(c) (2000). As a result, the substance of a request initially refused by Commerce in the context of a stand-alone changed circumstances review will normally be considered by the agency in the context of the next annual administrative review. The matter as to which Commerce refuses to initiate a changed circumstances review, then, will be subsumed in the final determination.

However, as this case demonstrates, a refusal to initiate changed circumstances review is not always an intermediate agency action. Here, there is no subsequent annual administrative review, or any other compulsory review, envisioned by the statute. See supra Part II.B.2. Commerce's refusal to initiate the Second Changed Circumstances Review constitutes final agency action. Thus, the asserted APA cause of action in this case is wholly unconnected to Congress' concern for eliminating interlocutory appeals.

Recognizing that Commerce's refusals to initiate changed circumstances review may constitute either interlocutory or final agency action, there appear to be two possible ways to view the legislative history of the 1984 Amendment. Under the first view (which is most favorable to NART and Heveafil), the legislative history indicates that Congress was focused on Commerce's refusals to initiate changed circumstances review constituting interlocutory agency decisions. If Congress had only the limited goal of economizing judicial review with respect to these intermediate agency decisions, then this bolsters NART and Heveafil's argument that Congress did not intend to preclude review of final refusals to initiate. Instead, Congress intended to precisely adjust the statutory scheme to achieve its limited goal of eliminating judicial review of interlocutory refusals to initiate. That is, by

removing this agency decision from the list of causes of

action reviewable under the CIT's specific jurisdiction,

Congress intended to eliminate only review of interlocutory

refusals to initiate, recognizing that the APA[17] (or some other

statutory provision[18]) would provide a reviewable cause of

action for final refusals to initiate.

---

[17] The Court notes that only those refusals to initiate changed circumstances review constituting final agency action could possibly give rise to an APA cause of action reviewable under the CIT's residual jurisdiction.  That this must be so is demonstrated by the Court's analysis supra at Part II.B.2.  As noted therein, the availability of adequate prospective relief in the form of final agency action by Commerce is an absolute bar to accessing the CIT's residual jurisdiction.  It would therefore be entirely consistent with the expressed intent in the House Ways and Means Committee report had Congress considered that the excision of refusals to initiate changed circumstances review from 19 U.S.C. § 1516a(a)(1)(B) was the most economical mode of removing the interlocutory appeal from the CIT's jurisdiction, but preserving the APA cause of action for cases such as this.

[18] As observed supra at note 10, 19 U.S.C. § 1516a(a)(2)(B)(iii) provides for judicial review of a "final determination, other than a determination reviewable under paragraph (1), by [Commerce] or the Commission under [19 U.S.C. § 1675]".  19 U.S.C. § 1516a(a)(2)(B)(iii) (2000).  It appears to the Court that this statutory provision could be construed as encompassing a Commerce refusal to initiate changed circumstances review constituting a final agency decision, as this type of final determination technically arises under 19 U.S.C. § 1675.  If so, then judicial review of this agency determination would be available upon Commerce's publication of its refusal to initiate in the Federal Register.  The Court expresses no opinion on the likelihood of success of this possible 19 U.S.C. § 1516a claim, which has not been properly raised in this action by NART or Heveafil (who would first have had to seek a writ of mandamus compelling publication of the refusal to initiate the Second Changed Circumstances Review).

Under the second view (which is most favorable to Defendant), Congress intended to eliminate review of all Commerce refusals to initiate changed circumstances review and was simply indifferent to the fact that some refusals to initiate could constitute final agency action unreviewable by the CIT.  On this view, Congress intended to legislate with a broad brush and sweep away an entire category of causes of action, even if in so doing it precluded rights of action that were unrelated to its legislative purpose: i.e., eliminating interlocutory appeals.

After careful analysis of the statute's structural ambiguity and the legislative history pertaining to the 1984 Amendment, the Court finds the first of the scenarios described above is more plausible.  It is true that the statutory scheme, standing alone, could support a finding that Congress intended to foreclose judicial review in this case by negative implication.  The legislative history, however, demonstrates that Congress' legislative purpose in effectuating the 1984 amendment would not be served by precluding the asserted APA cause of action in this case.  Put another way, the presumption against implied preclusion of judicial review has not been overcome.  In this case, it is not appropriate to find implied preclusion by accident; the inquiry must remain focused on Congress' intent, and in the

light of the cited legislative history the Court is unable to find that Congress intended to eliminate judicial review over this exceedingly rare type of case.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court denies Defendant's motion to dismiss.


/s/ Richard W. Goldberg_____
**Richard W. Goldberg**
**Senior Judge**


**Date:        October 18, 2006**
**             New York, New York**